FILED

MAR 1 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT
# COURT FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM,

      Detainees,
      Guantánamo Bay Naval Station,
      Guantánamo Bay, Cuba;

          Petitioners/Plaintiffs,

    v.

GEORGE W. BUSH
      President of the United States
      The White House
      1600 Pennsylvania Avenue, N.W.
      Washington, D.C. 20500;

DONALD RUMSFELD
      Secretary, United States
      Department of Defense
      1000 Defense Pentagon
      Washington, D.C. 20301-1000;

ARMY BRIG. GEN. JAY HOOD
      Commander, Joint Task Force - GTMO
      JTF-GTMO
      APO AE 09360; and

ARMY COL. BRICE GYURISKO
      Commander, Joint Detention
      Operations Group, JTF - GTMO
      JTF-GTMO
      APO AE 09360,

          Respondents/Defendants.

Case No.

CASE NUMBER 1:05CV00497

JUDGE: James Robertson

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 03/10/2005

PETITION FOR WRITS
OF HABEAS CORPUS
AND COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

No. _____

## PETITION FOR WRITS OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Petitioners Abu Bakker Qassim and A'del Abdu Al-Hakim (hereinafter "Petitioners")

seek the Great Writ. On information and belief, Petitioners are citizens of China and act on their

1

                  HABEAS CORPUS PETITION

Dockets.Justia.com

own behalf. Petitioners are civilians wrongly classified as an "enemy combatants" by the President of the United States, and are being held virtually incommunicado in military custody at the Guantánamo Bay Naval Station, Guantánamo Bay, Cuba. The detention of Petitioners is without lawful basis, without charge, without access to counsel and without being afforded any fair process by which Petitioners might challenge their detention. Petitioners are being held under color and authority of the Executive branch, and in violation of the Constitution, laws and treaties of the United States as well as in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to establish in this Court a lawful basis for their detention. This Court should also order injunctive and declaratory relief.

## JURISDICTION

1.      Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States." Petitioners bring this action under 28 U.S.C. §§ 2241(a), (c)(1), (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 701 et seq.; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the Constitution of the United States. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.      This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and also to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

2                          HABEAS CORPUS PETITION

## PARTIES

3.     On information and belief, Petitioners are citizens of the East Turkistan region of China presently incarcerated at Guantánamo Bay Naval Station and held in Respondents' unlawful custody and control.

4.     Respondent George W. Bush is the President of the United States and Commander-in-Chief of the armed forces of the United States. Petitioners are being detained pursuant to President Bush's authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, entitled Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("Executive Order"). President Bush is responsible for Petitioners' unlawful detention and is sued in his official capacity.

5.     Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to either the Executive Order or the President's authority as Commander-in-Chief, and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining custody and control over Petitioners, and is responsible therefor. He is sued in his official capacity.

6.     Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force that has control of the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioners and is sued in his official capacity.

7.     Respondent Col. Brice Gyurisko is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioners are presently held. He is the immediate custodian responsible for Petitioners' detention and is sued in his official capacity.

## STATEMENT OF FACTS

HABEAS CORPUS PETITION

8. The United States has not shown that Petitioners are, or have ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the Government in any civil or military proceedings.

9. Petitioners seek to enforce their rights to a judicial determination of the lawfulness of their detention.

10. The United States has not shown that Petitioners were members of the Taliban, of the armed forces of Afghanistan, or of Al Qaeda prior to their detention. Nor has it shown that Petitioners committed any violent acts against any American person or property. Furthermore, the United States has failed to show that Petitioners had any involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing armed conflict, or any acts of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. Each Petitioner remains incarcerated at Guantánamo Bay Naval Station, a territory over which the United States exercises exclusive jurisdiction and control.

11. Petitioners have not been afforded any procedures that satisfy their rights under the most fundamental common law notions of due process, the Constitution of the United States, the laws and treaties of the United States, or customary international law.

### The Joint Resolution

12. In the wake of the September 11, 2001, attacks on the United States, the United States, at the direction of President Bush, began a military campaign in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."

HABEAS CORPUS PETITION

Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224

(Jan. 18, 2001) ("Joint Resolution").

13.     Petitioners are not properly detained pursuant to President Bush's authority as

Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

### The Executive Order

14.     On November 13, 2001, President Bush issued an executive order (the "Executive

Order") authorizing Respondent Rumsfeld to detain indefinitely anyone President Bush has

"reason to believe":

i.      is or was a member of the organization known as al Qaeda;
ii.     has engaged in, aided or abetted, or conspired to commit, acts of international
        terrorism, or acts in preparation therefor, that have caused, threatened to cause, or
        have as their aim to cause, injury to or adverse effects on the United States, its
        citizens, national security, foreign policy, or economy; or
iii.    has knowingly harbored one or more individuals described in subparagraphs (i)
        and (ii).

President Bush is obligated to make this determination in writing. The Executive Order

was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution

of September 18, 2001.

15.     The Executive Order purports to vest President Bush with the sole discretion to

identify individuals who fall within its purview. It establishes no standards governing the

exercise of his discretion. The Executive Order contains no notification provision for informing

a detainee of the charges he may face. The Executive Order authorizes detainees to be confined

indefinitely without charges. It contains no provision for a detainee to be notified of his rights

under domestic and international law, and provides neither the right to counsel, nor rights to

notice of consular protection or to consular access at the detainee's request. It provides no

recourse to a neutral tribunal to review the basis for or the legality of a detainee's continued

detention and contains no provision for recourse to an Article III court. In fact, the Executive

Order purports to expressly bar review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms which, since not reviewable by any court, may be based on false evidence, evidence obtained through torture, or even no evidence at all.

16.     The Executive Order was promulgated in the United States and in this judicial district. The decision to incarcerate Petitioners was made by Respondents in the United States and in this judicial district. The decision to detain Petitioners at Guantánamo Bay Naval Station was made in the United States and in this judicial district. The decision to continue detaining Petitioners was, and is, being made by Respondents in the United States and in this judicial district.

17.     The United States has not shown that President Bush has certified or determined in any manner, in writing or otherwise, that Petitioners are subject to the Executive Order.

18.     The United States has not shown that Petitioners have been, and are being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, or the laws and usages of war, in that Petitioners have been denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, as well as international law.

### Guantánamo Bay Naval Station

19.     On or about January 11, 2002, the United States Military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo Bay Naval Station. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

6

20.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, ___ U.S. ___, 124 S. Ct. 2686, 2698 (2004).

21.     On a date unknown to counsel for Petitioners, but known to Respondents, the United States transferred Petitioners to Guantánamo Bay Naval Station, where, upon information and belief, they currently reside in the custody and control of Respondents.

### The Conditions of Detention at Guantánamo

22.     Upon information and belief, the United States has held detainees at Guantánamo Bay Naval Station virtually incommunicado under conditions that violate their constitutional and international rights to dignity and freedom from torture, and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, "United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror,'" Oct. 27, 2004; *see also* The National Association of Criminal Defense Lawyers, "Abuse of Detainees at Guantánamo Bay," Nov. 2004.

23.     Many of these violations—including isolation for up to thirty days, twenty-eight-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror—were actually interrogation techniques approved for use at Guantánamo Bay Naval Station by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, Department of Defense, to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group

Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Apr. 4, 2003).[1]

24. Approved interrogation techniques appear to have resulted in the death of at least one detainee while in Respondents' custody in Iraq, and in other abuses at Bagram Air Force base. *Iraqi Died While Hung from Wrists*, ASSOC. PRESS, Feb. 17, 2005; *Papers Reveal Bagram Abuse*, THE GUARDIAN, Feb. 18, 2005.

25. Some military lawyers have objected to and tried to stop the abusive interrogations at Guantánamo Bay Naval Station. *Military Lawyers Objected to Interrogation Methods at Guantánamo Sources Say*, N.Y. DAILY NEWS, Feb. 13, 2005 ("Judge Advocates—uniformed legal advisers known as JAGs who were assigned to a secret war crimes task force—repeatedly objected to aggressive interrogations by a separate intelligence unit at Camp Delta, where Taliban and al-Qaida suspects have been jailed since January 2002. The military lawyers' actions had never been disclosed and are the first known cases of lower-level officers resisting interrogations at the Cuban camp that might constitute torture.").

26. Upon information and belief, Respondents contend that Petitioners should not be informed of their rights under the laws or Constitution of the United States, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and the 1954 Convention

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Igbal & Rhuhel Ahmed, Composite Statement: Detention in Afghanistan and Guantanamo Bay, 300, at http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See* Report Details Guantanamno Abuses, ASSOC. PRESS, Nov. 4, 2004.

Relating to the Status of Refugees or customary international law. As a result, upon information and belief, Petitioners lack awareness of their rights under domestic and international law.

27. On information and belief, the International Committee of the Red Cross ("ICRC") has charged the United States Military with intentionally using psychological and physical coercion on prisoners at Guantánamo Bay Naval Base during interrogations that was "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. TIMES, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo Bay Naval Station participated in planning for interrogations. *Id.; see also* M. Gregg Bloche and Jonathan H. Marks, *When Doctors Go to War*, N.E. J. MED., Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo Bay Naval Station have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques," including twenty-four-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See* Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*, N.Y. TIMES, Jan. 1, 2005, at A1; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, WASH. POST, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Memos Describe Abuses of Iraq Inmates*, N.Y. TIMES, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay*, WASH. POST, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. TIMES, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's

face, to try to break Muslim detainees. *Gitmo Soldier Details Sexual Tactics*, Assoc. Press, Jan. 27, 2005.

28.     On information and belief, the unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo Bay Naval Station include not only physical and psychological abuse, but also other impermissible conduct contrary to due process requirements, including having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees for the purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantánamo Detainees*, Seattle Post-Intelligencer, Jan. 19, 2005 at __.

29.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by United States Military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the Central Intelligence Agency or other entities controlled by President Bush. Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

30.     Counsel for Respondents maintain that the United States may hold detainees indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), et al., (D.D.C.), Tr. of Dec. 1, 2004, Or. Argument on Mot. to Dismiss, at 22-24 (statements of Principle Deputy Assoc. Att'y Gen. Brian Boyle); *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at Al. Moreover, the United States Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo Bay Naval Station. Christopher Cooper, *In Guantánamo, Prisoners Languish in a*

*Sea of Red Tape*, WALL ST. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of Permanency*, ASSOC. PRESS, Jan. 9, 2005.

31.     According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Mar. 8, 2005).

### Rendition

32.     During interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by means of torture. *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, THE NEW YORKER, Feb. 14, 2005, at 106.

33.     The United States' practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, The New York Times, The Washington Post, the Los Angeles Times, and the British Broadcasting Corporation ("BBC"). According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source. The suspects have been taken to countries ... whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics—including torture and threats to families—that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, WASH. POST,

Mar. 11, 2002, at A1; *see also* Dana Priest, *Long Term Plan Sought for Terror Suspects*, WASH. POST, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

34.     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)**

35.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

36.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common-law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice ("UCMJ"), Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

12                          HABEAS CORPUS PETITION

37.     To the extent that Petitioners' detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment of the Constitution of the United States on its face and as applied to Petitioners.

38.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SECOND CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

39.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

40.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights of Petitioners to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

41.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## THIRD CLAIM FOR RELIEF

### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

42.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

43.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by

LITDOCS/591044.3

the armed forces of the United States in times of armed conflict, as established by specific provisions of the Third and Fourth Geneva Conventions.

44. Violations of the Geneva Conventions are direct treaty violations, violate customary international law, and give rise to an enforceable claim by Petitioners under 28 U.S.C. § 2241 (c)(3).

45. Respondents are liable for the conduct described above insofar as they set the conditions, and directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

46. Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF

### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

47. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

48. By the actions described above, Respondents have denied and continue to deny Petitioners the process due to persons seized and detained by the armed forces of the United States in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

49. Accordingly, Petitioners are entitled to habeas corpus, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

### FIFTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - TORTURE)

14                          HABEAS CORPUS PETITION

50.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

51.     On information and belief, Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon detainees in order to obtain coerced information or confessions from them, punish or intimidate them, or for other purposes. Such abuses include, on information and belief, that detainees have been placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; subjected to solitary confinement or the threat of solitary confinement for prolonged periods of time for minor rule infractions; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

52.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

53.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against detainees.

LITDOCS/591044.3

54. On information and belief, Petitioners were subject to the same physically and psychologically abusive conditions as other detainees, and are entitled to habeas corpus, declaratory, and injunctive relief and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - WAR CRIMES)

55. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

56. By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of detainees constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions, and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

57. As a result of Respondents' unlawful conduct, upon information and belief, detainees have been and are being forced to suffer severe physical and psychological abuse and agony. Furthermore, upon information and belief, Petitioners have been subject to the same conditions as detainees, and are therefore entitled to declaratory and injunctive relief, and such other relief as the Court may deem appropriate.

16                    HABEAS CORPUS PETITION

## SEVENTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE -
### CRUEL, INHUMAN OR DEGRADING TREATMENT)

58.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

59.     Upon information and belief, the acts described herein intentionally and grossly humiliated and debased detainees, forced them to act against their respective wills and consciences, filled them with fear and anguish, and broke their physical or moral resistance.

60.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

61.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of detainees.

62.     Upon information and belief, Petitioners were subject to the same severe physical and psychological abuse and agony, and are entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

63.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

HABEAS CORPUS PETITION

64.     The acts described herein constitute arbitrary arrest and detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

65.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of detainees in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

66.     As a result of Respondents' unlawful conduct, detainees, upon information and belief, have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse. Furthermore, Petitioners, upon information and belief, are subject to the same conditions, and are therefore entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## NINTH CLAIM FOR RELIEF

### (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

67.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

68.     By the actions described above, Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of detainees in violation of

the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

69. As a result of Respondents' unlawful conduct, detainees have been and are being deprived of their freedom, separated from their families, and forced to suffer severe physical and mental abuse. Petitioners are subject to the same conditions, and are therefore entitled to habeas corpus, declaratory, and injunctive relief, and such other relief as the Court may deem appropriate.

## TENTH CLAIM FOR RELIEF

### (ARTICLE II OF THE UNITED STATES CONSTITUTION - UNLAWFUL DETENTION)

70. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71. The United States has not shown that Petitioners are, or have ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind. The Executive branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld,* ___ U.S. ___ 124 S. Ct. 2633, 2642 n.l (2004).

72. By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the Constitution of the United States by authorizing, ordering and directing that military officials seize detainees and transfer them to military detention, and by authorizing and ordering the continued military detention of detainees at Guantánamo Bay Naval Station. All of the Respondents acted and continue to act without

HABEAS CORPUS PETITION

lawful authority by directing, ordering, and/or supervising the seizure and military detention of detainees.

73.     President Bush's Executive Order authorizing the military seizure and detention of detainees by the Respondents is *ultra vires* and illegal in that it exceeds the Executive's authority under Article II of the Constitution of the United States. Accordingly, the Executive Order is void on its face, and as applied to Petitioners.

74.     To the extent that Respondents assert that their authority to detain Petitioners derives from a source other than the Executive Order, including, without limitation, the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the Constitution of the United States or otherwise, Respondents lack that authority as a matter of fact and law.

75.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

### ELEVENTH CLAIM FOR RELIEF
### (APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

76.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77.     The UCMJ governs the detention of persons by the armed forces of the United States. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See* Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned,

or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

78.     By arbitrarily and capriciously detaining Petitioners in military custody, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of Army Reg. 190-8 and other provisions of the UCMJ.

79.     Respondents' violation of Army Regulation 190-8 and of the UCMJ gives rise to a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.

80.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF

## (APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

81.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

82.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by the UCMJ and Army Regulation 190-8, resulting in a violation of the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq.

83.     Accordingly, Petitioners are entitled to habeas corpus, declaratory, and injunctive relief, as well as any other relief the Court  many deem appropriate.

LITDOCS/591044.3

## THIRTEENTH CLAIM FOR RELIEF

### (APA - TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

84.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

85.     By the actions described above, Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject detainees to torture and/or cruel, inhuman or degrading treatment in violation of the UCMJ and Army Regulation 190-8, thereby violating the Administrative Procedure Act, 5 U.S.C. §§ et seq. Upon information and belief, Petitioners are subject to the same conditions.

86.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF

### (DUE PROCESS CLAUSE - RENDITION)

87.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

88.     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

89.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

HABEAS CORPUS PETITION

## FIFTEENTH CLAIM FOR RELIEF

### (CONVENTION AGAINST TORTURE, CONVENTION RELATING TO THE STATUS OF REFUGEES AND GENEVA CONVENTION - RENDITION)

90.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

91.     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a direct violation of Petitioners' rights under the Third and Fourth Geneva Conventions, the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954).

92.     Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF

### (HABEAS CORPUS AND ALIEN TORT STATUTES - RENDITION)

93.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

94.     Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of Petitioners to a country that creates a foreseeable and direct risk that they will be subjected to torture constitutes a violation of Petitioners' rights under 28 U.S.C. §§ 2241 and 2242 and under customary international law, which may be vindicated under the Alien Tort Statute, 28 U.S.C. § 1350.

LITDOCS/591044.3

95. Accordingly, Petitioners are entitled to declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT ACT - DECLARATORY JUDGMENT)

96. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

97. Pursuant to 28 U.S.C. § 2201, this case presents an actual controversy as to which it is necessary that the Court declare the rights, obligations, and other legal relations of the parties.

98. Petitioners are entitled to a declaration that the Executive Order of November 13, 2001, is *ultra vires* and unlawful as applied to Petitioners, being in violation of Article II of the Constitution of the United States, the Fifth Amendment to the Constitution of the United States, the UCMJ, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the treaties of the United States, and customary international law.

99. Petitioners are also entitled to a declaration that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the regulations of the United States Military, the treaties of the United States, and customary international humanitarian law.

HABEAS CORPUS PETITION

LITDOCS/591044.3

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.      Grant the Writ of Habeas Corpus and order Respondents to release Petitioners from their current unlawful detention;

2.      Order that Petitioners be brought before the Court to vindicate their rights;

3.      Order that Petitioners cannot be transferred to any other country without the knowing consent and written agreement of Petitioners (obtained voluntarily and without duress) and Petitioners' counsel while this action is pending;

4.      Order that Petitioners cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioners will be subject to torture;

5.      Order Respondents to allow counsel to meet and confer with Petitioners in private and unmonitored attorney-client conversations;

6.      Order Respondents to cease all interrogations of Petitioners, direct or indirect, while this litigation is pending;

7.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioners;

8.      Order and declare the Executive Order of November 13, 2001, *ultra vires* and unlawful as applied to Petitioners, being in violation of Article II of the Constitution of the United States, the Fifth Amendment to the Constitution of the United States, the UCMJ, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the treaties of the United States, and customary international law;

9.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioners without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the

HABEAS CORPUS PETITION

process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the regulations of the United States Military, the treaties of the United States, and customary international humanitarian law; and

10.     Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the Constitution of the United States, federal statutory law, international law and the treaties to which the United States is a party.

Dated: March 10, 2005

Sabin Willett
Neil G. McGaraghan
Jason S. Pinney
Daniel Hunter Kiel
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
Telephone:    (617) 951-8000
Facsimile:    (617) 951-8925

Susan Baker Manning
**BINGHAM MCCUTCHEN LLP**
1120 20th Street NW, Suite 800
Washington, DC 20036
Telephone:    (202) 778-6150
Facsimile:    (202) 778-6155

Barbara Olshansky
Deputy Director
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012
Telephone:    (212) 614-6439

26