QASSIM et al v. BUSH et al Doc. 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM,

Petitioners/Plaintiffs,

v.

GEORGE W. BUSH, *et al.*,

Respondents/Defendants.

Case No. 05-0497 (JR)

**MEMORANDUM OF ABU BAKKER QASSIM AND A'DEL ABDU AL-HAKIM IN OPPOSITION TO MOTION TO STAY**



Dockets.Justia.com

## I. INTRODUCTION.

Petitioners Abu Bakker Qassim and A'Del Abdu Al-Hakim object to the Respondents' Motion to Stay Proceedings Pending Related Appeals and for Continued Coordination (the "Motion"), filed in this and other cases on March 11, 2005.

## II. FACTUAL BACKGROUND.

Petitioners allege that they are natives of the Turkistan region of China. Petition ¶ 3. They are unlawfully detained by the Respondents[1] at the United States Naval Station at Guantanamo Bay, Cuba. *Id.* Petitioners have not been permitted by the Government to consult with their counsel concerning the Motion, or for any other purpose.

Respondents have not disclosed any basis for the detention of Messrs. Qassim and Hakim, have not advised whether they have been charged with war crimes or not, and have not provided any basis for the Court to conclude that Petitioners were not seized in the Afghanistan theater.[2]

On Thursday, March 10, 2005, Petitioners filed their petitions and complaints for habeas corpus and declaratory relief. On Friday, March 11, 2005, Respondents appeared and filed the Motion. It seeks three things: (i) an indefinite stay of this proceeding, (ii) to rewrite of a form of protective order that was negotiated at length and expense before Judge Green, and (iii) indefinite relief from the statutory obligation to address the basis of Petitioners' continuing unlawful detention.

---

[1] The respondents are George W. Bush, Donald Rumsfeld, Army Brig. Gen. Jay Brooks and Army Col. Bruce Gyurisko, each of whom is sued in his official capacity.

[2] Following issuance by the Government of its return and grant by it of permission to meet with their clients, undersigned counsel will amend the Petition and any related papers as is then appropriate.

## III. ARGUMENT

### A. The Motion to Stay Should Be Denied.

#### 1. A Stay Would Offend the Plain Terms of 28 U.S.C. §2243 Governing Rights to Speedy Trial.

Despite its procedural clothing, the relief requested by the Government is substantive. A stay of proceedings under these circumstances is simply a continuation of the wrong of which Petitioners complain: unlawful detention without hearing.

Congress has prohibited vague and unlimited detentions in plain terms. Habeas corpus petitions are to be promptly addressed. The statute provides that Respondents must make return "within three days unless for good cause additional time, *not exceeding twenty days*, is allowed." 28 U.S.C. § 2243 (emphasis added). The day set for hearing must be "not more than five days after the return unless for good cause additional time is allowed." *Id.*[3] Even lawful detention must be abbreviated, and speedy-trial laws require military and other courts to hold speedy trials. *See* 10 U.S.C. § 833 (accused in court martial proceedings should be given notice of charges within eight days of confinement). Article 103 of the Third Geneva Convention sets out a ninety-day limit to unreviewed detentions. Granting the Government's Motion here would contradict these plain expressions of Congressional intent and binding international law.

The need for a prompt hearing is never greater than where the executive has afforded a petitioner no judicial review. *See Rasul v. Bush*, 124 S. Ct. 2686, 2692 (2004); *INS v. St. Cyr,* 533 U.S. 289, 301 (2001). The deference appropriately accorded by the judicial to the executive branch in the exercise of the latter's war powers should no longer delay these proceedings. The Supreme Court has ruled that these Petitioners are entitled to at least minimal due process, and

---

[3] The Habeas Corpus Rules relax these return periods in cases involving prior judicial involvement, but provide no such relaxation in cases of unreviewed detentions by the Executive Branch, leaving that question to discretion of this Court.

specifically considered and rejected the proposition that judicial review will intrude upon the powers delegated to the executive under Article II of the Constitution of the United States. *Rasul*, 124 S. Ct. at 2692-93.

**2. A Balance of the Equities Requires Denial of the Motions.**

Every litigation raises questions—usually routine—about timetable. The Government suggests that in filing its Motion, it is making an administrative request. The Motion invokes familiar administrative notions: judicial efficiency, the pendency of related proceedings, and so on. In fact, the request is anything but routine. Here timetable *is* the case. The Court should not address this request as a routine procedural order. The problem is made urgent by the extent to which process has already swallowed substance. The Government has deployed motion practice in a masterful campaign, and in related cases has dodged the trial court for more than three years. What is not happening is the one thing that the Supreme Court held should happen: that the *district courts* should "hear petitioners' habeas corpus challenges." *Rasul*, 124 S. Ct. at 2698. If the motion is granted, there may be no hearings for years.

**(a) *The Harm to the Petitioners.***

Because counsel have not yet been permitted by the Government to communicate with Messrs. Qassim and Hakim, we cannot advise the Court of the length of their detention. It is well known that many detainees have been held at Guantanamo since late 2001, and thus are now in their fourth year of unlawful detention. The United States has not provided any basis to contest that Messrs. Qassim and Hakim have not already been detained for years.

Much is known about the conditions of detainee confinement. Detainees are deprived of contact with families or counsel. Many have been subjected to coerced interrogations. Many have complained of psychological, and some of physical abuse. A substantial body of

information from sources other than detainees (including military personnel and the International Red Cross) demonstrates that abusive conditions have been widespread. *See generally In re Guantanamo Detainee Cases*, 2005 WL 195356, at *27-28 (D.D.C. Jan. 31, 2005); Petition ¶¶ 22 - 28. Numerous reports have documented the isolation, fear, and depression experienced by detainees, the shackling, the humiliation, the physical and psychological abuse. These reports document that the hardship is, in the words of the International Red Cross, "tantamount to torture." Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantanamo*, N.Y. TIMES, Nov. 30, 2004, at A1. The recitals of a litigation paper will never be adequate to communicate the sting of that hardship, and the degree to which continuing detention sharpens and prolongs it for Petitioners.

Respondents speak of a stay "pending appeal," but it is abundantly clear that the stay the United States seeks is indefinite. Briefing for the *Guantanamo Detainee Cases* appeal will not conclude until, at the earliest, June 28, 2005.[4] The date of oral argument is yet unknown. Even assuming the court of appeals moves with dispatch, it is highly unlikely that it will decide the cases before August. When the decision does come, if it is adverse to the Government it will be met with a *certiorari* petition and a request for another stay, and perhaps another full-blown Supreme Court appeal. The current Motion means Petitioners would face at least five more months of imprisonment before they could even begin to know the charges lodged against them and prepare a case.

In sum, the harm to Petitioners presented by the Government's Motion is substantial, real and immediate. At the same time, the delay sought by the Government is indefinite. This balance must weigh in Petitioners' favor.

---

4 A scheduling order issued on March 10, 2005, from the Court of Appeals for the District of Columbia Circuit. A copy is attached as Exhibit 1 hereto.

### *(b) The "Harm" to the Government's Lawyers.*

The Government mounts two justifications for its position. One is that responding to the habeas petitions burdens its lawyers. Memorandum at 11. This argument should not be taken seriously. We can pass the insult. (The suggestion that the burden of "processing and filing returns" somehow compares to that of being short-shackled in a concrete-floored cell was, we hope, unintended.) The more important point is that the executive cannot imprison people indefinitely on the basis that it hasn't lawyers enough to explain why. If the executive can incur the expense of detaining the Petitioners, then it can allocate or hire more lawyers.

Proceeding will not impose an unreasonable burden on the Government. The Court has broad authority to structure the form of a habeas hearing, see 28 U.S.C. § 2243, and can do so in a way that takes account of the Government's legitimate national security concerns. Moreover, if the Government believes that the proceedings of any given CSRT were adequate and compelling, we are confident that the Court can devise a procedure to permit the Government to offer evidence concerning those proceedings and at the same time protect the rights of Petitioners to contest the evidence and the adequacy of those proceedings.

### *(c) The Interests of the Court in Judicial Efficiency*

#### i. *The Immediacy of Harm to Petitioners Outweighs Appellate "Possibilities."*

The Government's main theme is that judicial efficiency will be served by waiting to see if Judge Green's decision is reversed on appeal. As the Government points out, shortly before she relinquished her joint coordination of the cases, Judge Green stayed her cases in light of the appeal in the related cases in which Judge Leon had reached a contrary view. [5]

---

[5] Judge Green ruled that the ultimate decision whether to stay new cases should rest with the judges having jurisdiction of those cases. See Order Granting in Part and Denying in Part Respondents' Motion for Certification of Jan. 31, 2005 Orders and for Stay (Feb. 3, 2005).

The appeal calendar was not then known, but is now known to be one that will likely delay resolution until the fall. The problems of Government rendition have exploded in recent weeks, and will require trial-court attention. It is also becoming clearer that the differences in status between detainees charged with war crimes, and detainees merely held as "enemy combatants" may require different forms of hearing, and certainly the development of different factual records.

For these and other reasons, we submit that the balance of harms here falls decidedly against a stay. First, against the *certainty* of continued, debilitating harm to Petitioners through their detention at Guantanamo, the *possibility* that a reviewing Court will reverse this Court's decision in *Hamdan v. Rumsfeld*, 344 F. Supp. 2d 152 (D.D.C. 2004), and/or Judge Green's decision in the *Guantanamo Detainee Cases* is remote. The Supreme Court has ruled that some process is due the Petitioners, and the Court was plain as to what it had in mind. District courts were to "*hear* petitioners' habeas corpus challenges," 124 S. Ct. at 2698 (emphasis added); in the district courts these respondents were to "make their response *to the merits* of petitioners' claims." *Id.* at 2699 (emphasis added). The district courts would be left to delineate the rules of the hearings, *but there is no question that the district courts were to hold hearings*. The Supreme Court clearly did not intend more metaphysical skirmishing about whether this Court could hear a case in the first place.

The Government's contends that those detained at Guantanamo Bay have no rights that can be vindicated on habeas. The Supreme Court in *Rasul* stated that

> Petitioners' allegations—that, although they have engaged neither in combat nor in acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States, without access to counsel and without being charged with any wrongdoing—unquestionably describe 'custody

in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241(c)(3).

*Rasul*, 124 S. Ct. at 2698 n.15. Whether or not it was essential to the result in *Rasul*, this language reflects the views of a Supreme Court majority. Presumably they meant what they said.

The notion that the Government's Combatant Status Review Tribunals ("CSRTs") preempted this plain expression of intent seems certain to fail. First, the Supreme Court said in *Rasul* that petitioners might proceed by habeas corpus, *id.* at 2698, and only Article III judges may hear that writ. 28 U.S.C. § 2241(a). Next, the Supreme Court in *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2648 (2004), outlined that basic due process would have to include "notice of the factual basis for his classification and a fair opportunity to rebut the government's factual assertions before a neutral decision maker." In the *Guantanamo Detainee Cases*, Judge Green delivered in a methodical, fact-specific account of the absence from the CSRTs of those basic protections. Indeed, this Court's ruling in *Hamdan*, while addressed to the deficiencies of a military commission in a war crimes case, applies *a fortiori* here. Despite substantially more protections than exist under the CSRTs, the commission came up short. A "process" in which the detainees received neither notice, nor counsel, nor an effective ability to learns of the bases for detention cannot meet even a primitive standard. *See Hamdan*, 344 F. Supp. 2d at 166-72.

At least two courts in this district (*Hamdan* and *Guantanamo Detainee Cases)* have now ruled that detainees who are prisoners of war have standing to assert rights under the Third Geneva Convention.[6] For 50 years, the Executive Branch has implemented the Geneva

---

6 It is hard to understand the basis for challenging this ruling. In the statute, Congress granted to a "prisoner" a right to contest "custody in violation of ... treaties of the United States." 28 U.S.C. § 2241 (c)(3). Thus it had in mind *treaties* that involve unlawful *U.S.* detention. No paradigm is more obvious than the Geneva Conventions, and certainly no act of Congress excludes the Geneva Conventions from the reach of the statute. That means Congress must have intended that beneficiaries of habeas corpus

Convention without questioning the lack of Congressional execution. *See United States v. Stuart*, 489 U.S. 353, 366 (1989). Regulations jointly promulgated by the armed services have consistently treated the Conventions as binding. *See* Army Regulation 190-8, §1-5 (a)(2) (1997); Dep't of the Army, Field Manual no. 27-10, The Law of Land Warfare, ch. 3, §I ¶ 71 (1956) ("FM27-10") (adopting GPW, art. 5 verbatim). Army Regulation 190-8 cites the Geneva Convention, rather than any federal statute or implied power, as the legal basis for the military's authority to promulgate the regulation. Geneva Convention, art. 7 also states that "[POWs] may in no circumstances renounce in part or in entirety the rights secured to them by the present Convention." It is unclear why the Geneva Conventions would allow individuals to waive rights they cannot enforce. And it is plain from the text of section 2241(c)(3) that noncitizens can bring claims based on this kind of violation. *See* n.5, supra.

Even if the Geneva Conventions were not self-executing, "the non-self-executing nature of a treaty is not fatal to an assertion of jurisdiction under it, provided that the cause of action over which jurisdiction is asserted already exists in some other statute – as is the case for habeas petitions." Vladeck, *Comment, Non-Self-Executing Treaties and the Suspension Clause after St. Cyr*, 113 Yale L. J. 2007, 2011-12 (2004). A treaty has legal effect whether or not it provides a private right of action. *See*, *e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 427-29 (2003). The habeas statute does not distinguish between self-executing and non-self-executing treaties; it provides that no person may be held in violation of any treaty. A construction of §2241(c)(3) to exclude claims under non-self-executing treaties would raise serious issues under the Suspension Clause and should therefore be avoided. *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 216 (3d Cir. 2003).

---

rights under this phrase must *exclude* citizens of the United States, for the Geneva Conventions apply to war, and the United States never makes war upon its own citizens. Thus Congress must have intended that the district courts hear non-citizens on petitions for habeas corpus.

In sum, it is exceedingly unlikely that the Government will prevail on appeal. A reversal is possible, of course, but we stress that the Government can point only to the *possibility* that a courtroom may ultimately prove to have been devoted to unnecessary hearings, and weigh that possibility against the *certainty* to Mr. Qassim and Mr. Hakim of prolonging their long night at Guantanamo. We submit that the possibility that hearings conducted in this Court might one day prove to have been unnecessary should count for little. Whatever the calculus as to potential appeals—a calculus that every district judge faces when a case is filed—the resolution should be in favor of enabling the common-sense rule of *Rasul*: there should be a substantive hearing before a district court.

*ii. Judicial Economy is Best Served by Denying the Motion.*

The Government's efficiencies analysis ignores a practical problem. According to the Government, there are more than five hundred detainees at Guantanamo Bay, although fewer than 100 have yet filed habeas corpus petitions. But this is likely to change, and change quickly.[7] That is why staying cases *now* risks procedural gridlock *later*. When the stay is lifted it will not be 50 cases frozen in the starting blocks and clamoring for judicial attention. It likely will be five hundred and fifty. At that point each judge of this Court may have scores of petitions on his or her docket. It would become practically impossible to obtain a hearing. It makes far more sense to move cases smartly as they are filed, and to move them starting now.

It can only help the appellate process for trial judges to develop a full factual record. Appeals often result in remands for findings. It may be that resolution of cases involving persons charged with war crimes will implicate rules different from those involving persons held as "enemy combatants." Further, the "enemy combatant" status (which, as the Government

[7] A small group of courageous military and private attorneys brought the original cases. The broader bar is at last awakening to acts of the Executive Branch that are incompatible with a Constitution we cherish and are sworn to uphold. More and more ordinary practitioners will file petitions.

conceded to Judge Green in *Guantanamo Detainee Cases*, embraces everyone from a person who plots a murderous bombing to a little old lady in Geneva who writes a check to the wrong "charity"[8]) is so broad that factual findings will undoubtedly be necessary to permit meaningful review. One "enemy combatant" case may be very unlike another. With findings an appeals court may conclusively resolve a case that otherwise would have required remand and still further trial-court proceedings. In sum, we submit that judicial economy will best be served by moving forward to a hearing.

**3. The Public Interest Favors Denial of the Motion**

The Government likes to assert that it acts in the public interest. With the passage of time it grows more and more difficult to take this position seriously. For example, it is difficult to understand how, four years after his detention, a Petitioner not tried for war or other crimes might still represent a "threat," or a source of useful information (even assuming, as the Government contends and as we deny, that either factor would have justified his detention at Guantanamo in the first place).

We submit that the public interest runs firmly in the other direction. The continued exercise of naked power by the executive has wounded the nation's reputation abroad and at home imperils public faith in what has been a cornerstone of our freedoms: meaningful judicial review. This public interest is magnified by the daily drumbeat of shameful disclosures: the military's own reports of its violation of the Geneva Conventions at Abu Ghraib Prison in Iraq, of murder in the Bagram prison in Afghanistan, *see* Douglas Gehl, *Army Details Scale of Abuse of Prisoners in an Afghan Jail*, N.Y. TIMES, Mar. 12, 2005, and the credible accounts of U.S.-sponsored torture by surrogates abroad. *See* Petition ¶¶ 32-33 and sources cited.

[8] *Guantanamo Detainee Cases*, 2005 WL 195356, at *28.

In short, the public interest demands that meaningful hearings in these cases not be further delayed.

**B. At Any Rate No Stay Should be Entered Now.**

These Petitions are in their earliest stage. Undersigned counsel are seeking security clearance from the Government, and hope promptly to interview with their clients. The cases will not be ready for hearing before the oral argument in *Hamdan* (now scheduled for April 7, 2005). There may be further indications from a decision in that case, or from other developments in related cases, that should be considered before scheduling these Petitions for trial or taking other action.

Recent developments have shown that interim relief is urgently needed, particularly with respect to rendition matters. For example, on March 12 Judge Collyer entered a temporary restraining order with regard to rendition in the habeas case of *Abdah v. Bush*, no. 04-1254. While the Government says that it does not intend a stay to reach such motions, entry of any pre-litigation stay inevitably will create confusion when the next pre-trial issue arises. We will then have motion practice (and perhaps more dilatory appeals?) on the question whether a district judge's stay embraced a later procedural motion. In short, the motion to stay is premature. The cases should be readied for hearing. If the motion is not denied outright, it should at least be denied without prejudice to later reconsideration.

**C. The Request for "Rolling" Production of Returns Should be Denied**

Included in the motion is a remarkable request that the Government be excused from the statutory requirement that it make prompt return of its grounds for holding Messrs. Hakim and Qassim. The return date for a *habeas corpus* petition is three days. 28 U.S.C. § 2243. Extensions beyond 20 days are not permitted. *Id.* This section is more than a plain requirement

of Congress. It reflects a belief deep in our legal culture that nothing is so offensive to a free people as extrajudicial detention by the Executive. *See Rasul*, 124 S. Ct. at 2692.

No basis has been shown for excusing this mandatory statutory duty. Petitioners cannot prepare their case without knowing what the charges are. This much of the Motion must be denied.

### D. The Request to Revisit the Protective Order Should be Denied.

Numerous petitioners negotiated, at great length before Judge Green, a protective order to address the Respondents' national security concerns. A copy is attached as Exhibit 2. The protective order Judge Green executed imposes substantial—indeed unique—burdens on counsel. We are willing to undertake them. Now the motion seeks to rewrite that order, indeed to impose on counsel many of the limitations that the Government sought unsuccessfully from Judge Green. The changes made would further delay and complicate the efforts of lawyers to understand the basis on which their clients are being held, and hamstring efforts to prepare cases for review by the Court. It should be denied.

## IV. CONCLUSION

Endless metaphysics, endless procedural motions, endless stays and delays can mock what makes a free people most proud: timely, meaningful review by a strong and independent judiciary. We respectfully submit that it cannot really be that our clients, and the other detainees at Guantanamo, must abide two full rounds of appeals through the Supreme Court of the United States before a district judge will hear the facts of their cases.

**WHEREFORE**, Petitioners Qassim and Hakim request:

1. That the Motion be denied outright; or, in the alternative,

2. That the Motion be denied without prejudice to the rights of the Government to renew such a motion at such time as these Petitions are fully readied for hearing;

3. That the Government be compelled to make prompt return pursuant to 28 U.S.C. 2243;

4. That a protective order be entered in the form of Exhibit 2 hereto, and

5. That the Court grant such other and further relief as may be just and proper.

Dated: March 14, 2005

Sabin Willett
Neil G. McGaraghan
Jason S. Pinney
Daniel Hunter Kiel
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8925

Susan Baker Manning
**BINGHAM MCCUTCHEN LLP**
1120 20th Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Barbara Olshansky
Deputy Director
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439