IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM, *et al.*,

Petitioners,

v.

GEORGE W. BUSH,
President of the United States, *et al.*,

Respondents.

Civil Action No. 05-CV-0497 (JR)

**RESPONDENTS' OPPOSITION TO PETITIONERS' REQUEST FOR (i) RULE 16 CONFERENCE, (ii) PROTECTIVE ORDER PROTECTING LEGITIMATE SECURITY CONCERNS OF RESPONDENTS, (iii) PROMPT RETURN, AND (iv) OTHER PROCEDURAL RELIEF**

Respondents hereby file this opposition to petitioners' request for various procedural relief. For the reasons stated herein, as well as the reasons stated in Respondents' Motion to Stay Proceedings Pending Related Appeals and for Continued Coordination, and Reply in Support thereof (Docket Nos. 2, 8), the relief sought by petitioners should be denied.[1]

[1] Respondents do not intend to block counsel access to properly represented petitioners. To that end, respondents do not object to entry of the Court's November 8, 2004 Amended Protective Order and Procedures for Counsel Access To Detainees at the United States Naval Base In Guantanamo Bay, Cuba, see In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004) ("Protective Order") (attached hereto as Exhibit A) as requested by petitioners, see Pets' Request ¶ 12, as long as the Court also enters other related, supplementary orders. These orders include the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, in In re Guantanamo Detainee Cases (attached hereto as Exhibit B), which clarified and addressed certain issues related to procedures for filing materials subject to the Protective Order, and Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004 in In re Guantanamo Detainee Cases (attached hereto as Exhibit C), which requires that "protected information" under the Protective Order be treated as "protected" pending further order of the Court.

Dockets.Justia.com

## ARGUMENT

**I. A Rule 16 Scheduling Conference or Other Scheduling Conference Is Improper and Unnecessary.**

Petitioners' request for a "prompt Rule 16 conference" to address "significant procedural issues" in this habeas case, Pets' Request ¶ 1, is both inappropriate and unnecessary. As a preliminary matter, the Local Rules of this Court specifically exclude habeas corpus proceedings from the scheduling requirements of Rule 16(b) and Rule 26(f). See LCvR 16.3(b) ("The requirement of this Rule, LCvR 16.3 of these Rules, and Rules 16(b) and 26(f), Federal Rules of Civil Procedure, shall not apply in the following categories of proceedings . . . (2) a petition for *habeas corpus* . . ."); Fed. R. Civ. P. 16(b) (providing for a mandatory scheduling order in civil cases "[e]xcept in categories of actions exempted by district court rule as inappropriate. . . ."). Cf. Harris v. Nelson, 394 U.S. 286, 295 (1969) ("[T]he intent of the draftsmen of the [Federal Rules of Civil Procedure] indicates nothing more than a general and nonspecific understanding that the rules would have very limited application to habeas corpus proceedings."). Petitioners acknowledge as much in their brief. See Pets' Request ¶ 1, n.2 ("LCvR 16.3(b) makes clear that certain standard provisions of civil litigation, including initial disclosure and Rule 26(f) conferences do not apply in habeas corpus cases."). Consequently, a Rule 16 conference would be improper here because the Court is not obligated to enter a scheduling order in this case pursuant to Rule 16(b).

Even if a Rule 16 scheduling conference is ever proper in a habeas proceeding, petitioners' request for a Rule 16 conference should be denied here because the procedural posture of this case does not warrant such a hearing. Respondents' motion to stay proceedings,

based on the pendency of related appeals that will address the core legal issues of this action, is fully briefed and awaiting decision by this Court. If this case is stayed and it is ultimately determined on appeal that respondents should prevail on the merits in this and the other Guantanamo habeas cases, then petitioners' "significant procedural issues" become moot. Thus, given that this case should be stayed pending related appeals that will determine whether and how additional proceedings should take place, a Rule 16 conference at this time is unnecessary, and in any event, premature. Petitioners' request should be denied.

## II. Access to Factual Returns Is Unnecessary and Burdensome Given That the Pendency of Related Appeals That Will Determine Whether Factual Returns Will Be Required At All

Petitioners also request that respondents submit factual returns to the petition by April 1, 2005.[2] See Pets' Request ¶ 10. Given that the D.C. Circuit will be considering the proper scope of these proceedings, including whether the claims of petitioners can be dismissed without reference to specific factual returns for petitioners, it makes no sense to go forward with the merits and provide petitioners' counsel access to factual returns. See Resps' Mot. to Stay at 9-12. Upon entry of and compliance with the Protective Order, counsel will be able to meet and correspond with petitioners in a privileged manner at Guantanamo Bay on appropriate matters related to their cases. See Protective Order, Exhibit A (Revised Procedures For Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba). Even if counsel had access to factual returns, they would not be able to share classified information in the returns with

[2] A factual return for a petitioner in a Guantanamo detainee case typically has consisted of the record of proceedings before the Combatant Status Review Tribunal that confirmed petitioner's status as an enemy combatant properly subject to detention. The factual return is separate from briefing on legal issues in the cases. Factual returns include both classified and unclassified material.

petitioners. See Protective Order ¶ 30. Thus, there is no reason why counsel need access to factual returns at this time.

Moreover, the submission of factual returns which, in any event, may ultimately be unnecessary, burdens the government's resources and risks the inadvertent disclosure of classified information. Each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Petitioners are but two of nearly seventy detainees at Guantanamo Bay who filed petitions for habeas corpus in this latest wave of cases. Permitting access to factual returns in this case would precipitate a cascade effect in which many of the other nearly seventy petitioners, seeking parity of treatment, would also request access to factual returns in their cases. Thus, petitioners' request for access to factual returns, if granted, would result in an immense logistical burden for respondents. Further, submission of these returns will at least double the number of counsel and other individuals with access to classified information contained in the returns, thereby increasing the risks of inadvertent or other disclosure or compromise of the information. These burdens and risks, however, could be rendered completely unnecessary, depending on the outcome of the appeals. Cf. In re Guantanamo Detainee Cases (Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal), No. 02-CV-0299, et al., 2005 WL 326862 (D.D.C. Feb. 8, 2005) (Green, J.) (staying cases so as to avoid expenditure of "substantial resources" and imposition of "significant burdens" that might not be necessary depending on outcome of appeal).

Thus, as explained in respondents' motion to stay proceedings pending related appeals, respondents should not have to submit factual returns pending resolution of the appeals; rather, the cases should be stayed except with respect to entry of the Protective Order.[3]

## III. Petitioners Should Not Be Provided with Extra Security Clearances Beyond the Four Clearances That Are Typically Granted to Counsel in Other Guantanamo Habeas Cases

Petitioners also request that they be provided with three additional security clearances beyond the standard four clearances that are issued to counsel for petitioners in Guantanamo Bay detainee cases, for "two additional lawyers and a legal assistant in Boston." Pets' Request ¶ 14. Since petitioners have failed to demonstrate sufficient justification for these extra security clearances, and considering the additional burdens that processing these extra clearances would place on the government's already over-taxed resources, petitioners' request should be denied.

Counsel in this case, as well as in the other Guantanamo Bay detainee cases, are typically provided with four security clearance applications which they may divide among attorneys and litigation support staff at their discretion. Petitioners claim that they need three extra security clearances beyond the standard four because "briefs can be written only at the Government's secure facility at Crystal City . . . [they] have taken this matter on a *pro bono* basis . . . and from time to time various persons on this team will be unavailable." Id. ¶ 13. However, this alleged "severe hardship" faced by petitioners is no different than the circumstances confronted by virtually every other habeas counsel in the other Guantanamo cases. Petitioners have presented

---

[3] If the submission of factual returns were to go forward, it could only be done pursuant to a coordinated and reasonable schedule, given the severe logistical burdens posed by the undertaking. See Respondents' Reply in Support of Motion to Stay at 4 (arguing that courts have the discretion "to consider the burdens involved in filing responses to habeas petitions when implementing case management schedules").

no unusual circumstances why they should be given special treatment above and beyond what other counsel are typically granted. Moreover, counsel for petitioners represent only two detainees in this case. Security clearances are required for counsel to visit these two detainees at Guantanamo Bay, and to handle any classified information that they might receive from their clients. There is no reason why petitioners require seven lawyers and paralegals with security clearances to work on this case, especially given that the case should be stayed pending the related appeals.

Further, the burdens of processing extra security clearances are significant for the government. With new petitions filed each week, there are currently over 100 pending security clearance applications for counsel, support staff and translators representing Guantanamo Bay detainees. The Department of Justice, Litigation Security Division, and Federal Bureau of Investigation are expeditiously processing security clearance applications for these individuals. Each application requires FBI agents to conduct substantive background investigations of all applicants and their references. Interim security clearances typically have taken four to eight weeks from the submission of the appropriate application, depending on any specific security issues that may arise in the clearance background investigation, but with the recent influx of new cases, that time frame is already being pushed to its limit and may lead to delays in the near future. Respondents want to ensure that all habeas counsel and interpreters who intend to visit detainees at Guantanamo Bay will get the opportunity to do so as quickly as possible. Whatever action is taken to accommodate petitioners' counsel in this case undoubtedly will be sought with

respect to all other habeas cases. There is no reason to give petitioners special treatment here. Petitioners' request for extra security clearances should be denied.[4]

## CONCLUSION

For the reasons stated, petitioners' request for a Rule 16 conference, access to factual returns, and additional security clearances should be denied. Respondents do not object to entry of the Protective Order and other related, supplementary orders in this case to facilitate counsel visits to Guantanamo Bay.

Dated: March 29, 2005

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DAVID B. SALMONS
Assistant to the Solicitor General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

/s/ Preeya M. Noronha
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY

---

[4] Petitioners' request that the Court "[o]rder the Government to complete its security review of counsel expeditiously and in no even later than by April 20, 2005," Pets' Request at 4, is unreasonable and should be denied. As stated above, respondents are processing over 100 applications for security clearances by habeas counsel representing detainees at Guantanamo Bay. All of the applications are processed in the order received and there is no reason to give these counsel special treatment by moving them to the front of the line. In any event, respondents are processing their applications as expeditiously as possible, and because of various logistical, administrative and security issues that may arise during this process, cannot commit to completion by any date certain.

JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 7144
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

Attorneys for Respondents