IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM,<br><br>Detainees,<br>Guantánamo Bay Naval Station,<br>Guantánamo Bay, Cuba;<br><br>      Petitioners/Plaintiffs,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>      Respondents/Defendants. | Civil Action No. 05-0497 (JR)<br><br>**REPLY IN SUPPORT OF REQUEST FOR RULE 16 CONFERENCE AND FOR OTHER PROCEDURAL RELIEF** |

By seeking a stay, refusing to show cause, and avoiding a pretrial conference, the Government would evade this simple question: does the United States believe that these Petitioners are a security threat?

Although Petitioners believe the Supreme Court plainly ordered that every Guantánamo Bay *habeas corpus* case should proceed to a hearing on the merits before a federal judge[1], Petitioners appear to be in a unique position. **There is a substantial possibility that the United States has *already* determined that Petitioners Qassim and Al-Hakim are not "enemy combatants," and are not a threat to the United States.** Petitioners' unusual "Uighur" status makes it all the more important that the Court promptly schedule a conference. The latter may be styled a Rule 16 conference, a hearing on the pending motions, a hearing to address procedural aspects of an order to show cause under 28 U.S.C. § 2243, an exercise of the Court's inherent discretionary power to address procedural disputes in the matter before it, or all of the above.

---

[1] *Rasul v. Bush*, 124 S. Ct. 2686, 2699 (2004) ("We ... remand for the District Court to consider in the first instance the merits of petitioners' claims.").

I. STATEMENT OF FACTS

A. Petitioners are Believed to be Uighur Citizens of China.

Counsel have not yet had access to their clients, and—despite repeated requests—the Government has refused to provide any specific information about Petitioners. Counsel's best information about Petitioners Qassim and Abdu Al-Hakim is a one-page letter titled "Request for Legal Assistance." Declaration of Susan Baker Manning in Support of Reply Re Request for Rule 16 Conference and for other Procedural Relief ("Manning Decl."), Ex. A. In that letter, Petitioners list their nationality as "Turkistan – China." The western-most province of China is the Xinjiang Uighur Autonomous Region, which borders Afghanistan, Pakistan, India and several of the former Soviet republics. *Id.*, Ex. B. It is part of a region sometimes known as "Turkistan" or "East Turkistan." The native Uighur ("WEE-guhr") people are Turkic-speaking Muslims. *Id.*, Ex. C. Based on the information available to date, Counsel believe that Petitioners Qassim and Abdu Al-Hakim are Uighurs.

Approximately twenty-two ethnic Uighurs are being held at Guantánamo Bay. *Id.*, Ex. D. According to a March 16, 2005 press report, "The Pentagon determined last year that half of the two dozen Uighur Chinese captured in the war on terrorism have no intelligence value and should be released."[2] *Id.*, Ex. E. Counsel have repeatedly asked the Government whether it considers Petitioners Qassim and Abdu Al-Hakim to be a threat, or whether it has determined that they should be released. *Id.*, Exs. G & H. The Government has not responded.

B. Chinese Oppression of Uighurs.

According to the U.S. government, official Chinese government policy has resulted in the

---

[2] There is substantial reason to believe that Uighur prisoners at Guantánamo Bay, and possibly Petitioners themselves, have been mistreated and/or tortured. In autumn 2002, a Chinese delegation visited Guantánamo Bay, allegedly to assist in getting Uighur prisoners to talk. Manning Decl., Ex. F. Amnesty International reported, "It is alleged that during (the delegation's visit), the detainees were subjected to intimidation and threats and to stress and duress techniques such as environmental manipulation, forced sitting for many hours and sleep deprivation." *Id.* Citing "credible" reports, Amnesty International said some of the interrogation techniques were "alleged to have been on the instruction of the Chinese delegation." *Id.*

migration of millions of ethnic Han Chinese into the Uighur homeland since 1949. Manning Decl., Ex. I, p. 35. This policy has led to ethnic tensions and a Uighur separatist movement. *Id.* Beginning in 1997, the Chinese government embarked on a campaign against this separatism. *Id*, p. 36. According to the State Department's 2004 Country Report on Human Rights in China, "Because the Government authorities in Xinjiang regularly grouped together those involved in 'ethnic separatism, illegal religious activities, and violent terrorism,' it was often unclear whether particular raids, detentions, or judicial punishments targeted those peacefully seeking to express their political or religious views or those engaged in violence." *Id.*, p. 36. Since September 11, 2001, many observers have raised concerns that the Chinese have used the U.S. "war on terror" as a pretext for cracking down harshly on Uighurs. In December 2003, for example, the Chinese government published an "East Turkistan Terrorist List" that included any organization openly advocating independence for the Uighurs in East Turkistan. *Id.*, p. 36.

In December 2002, a spokesman for the Chinese Foreign Ministry said that any Uighurs captured in Afghanistan should be returned to China "to face charges of terrorism." *Id.*, Ex. J. Concerned that the Pentagon was set to return many Guantánamo captives to their home country, Amnesty International began a campaign to dissuade the U.S. Departments of State and Defense from "returning Uighurs to China where they would be at risk of serious human rights abuses." *Id.*, Ex. K. On August 12, 2004, Secretary of State Colin Powell said that the ethnic Uighurs at Guantánamo would not be returned to China. "The Uighurs are a difficult problem," Powell said in a briefing, "and we are trying to resolve all issues with respect to all detainees at Guantánamo. The Uighurs are not going back to China." *Id.*, Ex. L.

Recent press reports indicate, however, that the Government has been unsuccessful in finding a European country willing to take the Uighurs from Guantánamo. *Id.*, Ex. E. Press reports have quoted a "senior administration official" as indicating "[t]he US may have to consider sending Muslim Chinese prisoners at Guantánamo Bay to China, following failed efforts to persuade European countries to accept them as refugees." *Id.* The Government has not

DCDOCS/622467.1

spoken publicly (or in these cases) on this issue, but its official silence raises grave concerns regarding Petitioners' status and fate.

## II. THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE PROMPT FACTUAL RETURNS.

Given the substantial public indications that half of the detainees like Petitioners have already been determined not to be a threat to the United States, it is particularly important that the Government provide prompt factual returns in these cases. The Rule 16 relief sought will help facilitate that. In addition, still pending before this Court is a motion that would preliminarily enjoin rendition of the petitioners without 30-days notice. Preliminary injunctions recently have been allowed by Judge Kennedy in *Abdah v. Bush*, No. 04-CV-1254 (D.D.C. Mar. 12, 2005), and by Judge Kessler in both *Al-Joudi v. Bush*, No. 05-301 (D.D.C. April 4, 2005) and *Al-Marri v. Bush*, No. 04-2035 (D.D.C. April 4, 2005). No injunctive relief has been granted in these cases, however, and as Uighurs Messrs. Qassim and Abdu Al-Hakim remain at extreme risk.[3] The Government has vigorously resisted any commitment to provide notice of intent to render. We submit that this circumstance makes it all the more necessary that the Court schedule a prompt hearing on the pending motion for a preliminary injunction, as well as scheduling a pre-trial conference on the various procedural issues.

We submit that the Government's opposition is simply a reprise of arguments rejected in *Rasul*, when the Supreme Court unambiguously concluded: "[T]he answer to the question presented is clear. . . . [28 U.S.C] § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base." *Rasul v. Bush*, 124 S.Ct. 2686, 2698 (2004). The combination of (i) a stay that would avoid making return on the petitions (which, by statute, should have been responded to

---

[3] As Amnesty International has reported, "The fate of Uighurs returned to China is often difficult to establish due to tight restrictions on information, including the threat of reprisals against family members who pass such information abroad. However, in some recent cases, returnees are reported to have been subjected to serious human rights violations, including torture, unfair trial and even execution." Manning Decl., Ex. M at 8.

weeks ago), and (ii) the possibility of rendition without notice would render *Rasul*'s holding impotent.

### III. THE GOVERNMENT WILL NOT BE BURDENED BY BEING REQUIRED TO COMPLY WITH THE HABEAS CORPUS STATUE, OR BY THE OTHER REQUESTED RELIEF.

The Government argues that providing prompt factual returns and a sufficient number of security clearances for counsel would be burdensome. It has not presented the Court with even a single fact that would allow the Court to weigh the alleged "burden" on the Government of providing the factual returns against the clear requirements of the statute and the harm of executive detention. The Government has merely listed the steps it will take to provide factual returns. Opp. at 4 (noting that evidence must be obtained by counsel from clients, reviewed, and classified and public versions must be prepared). This is wholly unremarkable, and the government is not *unduly* burdened merely because it must take action to comply with the law. The Government's burden arguments as to the requested security clearance are equally general[4], and equally faulty.

The Government suggests that Petitioners are the tip of the iceberg, because other Guantánamo Bay detainees have sought writs of habeas corpus. The potentially unique situation of Petitioners Qassim and Abdu Al-Hakim as Uighurs shows the irrelevance of this argument. Petitioners' rights are not a function of the number of other petitioners. If Respondents now have been named in a number of cases, it may simply be the result of actions they have knowingly taken over a period of years. Respondents' cannot impede this litigation by refusing to allocate sufficient resources to give counsel timely access to key information, and to their clients.

---

[4] The Government has not offered any justification for the number of security clearances it chooses to make available to counsel.

## IV. THE COURT SHOULD ENTER THE NOVEMBER 8, 2005 PROTECTIVE ORDER, AS AMENDED

In their Opposition, Respondents stated that they "do not object" to entry of the November 8, 2004 Amended Protective Order and Procedures of Counsel Access To Detainees a the United States Naval Base In Guantánamo Bay, Cuba so long as the Court also entered a December 13, 2004 amendment of that Order, as well as a November 10, 2004 Order addressing Designation Procedures for "Protected Information." *See* Opposition at 1, n.1 and Exs. A – C thereto. Petitioners join Respondents in requesting prompt entry of the November 8, 2004 Protective Order and the December 13, 2004 amendment. The November 10, 2004 Order, however, is tailored to a specific dispute in the cases then before Judge Green, and therefore should not be entered here without modification. *See* Opposition, Ex. C. Petitioners agree that an order clarifying the procedure for designating "protected" information or documents is necessary. Petitioners submit and request that the Court enter a modified version of the November 10, 2004 Order, which deletes provisions not germane here but in all other material respects mimics the November 10, 2004 Order. In short, Petitioners agree to the entry of the November 8, 2004 Order (Opposition Ex. A) and the December 13, 2004 Order (Opposition Ex. B), and request that the Court enter the Petitioners' Proposed Order Concerning Procedures for Designating Protected Information (submitted herewith).

## V. THIS CASE SHOULD MOVE FORWARD WITHOUT DELAY

This case should move forward. The most efficient way to address the numerous outstanding issues is for the Court to hold a prompt hearing and Rule 16 conference or other form of pre-trial conference. The Government opposes the requested conference merely because it is at the discretion of the Court—which is, of course, not actually a reason for opposing it— and because the Government has moved for a stay. That stay has not been granted, and should not be granted for all of the reasons discussed in Petitioners' March 14, 2005 Opposition to Motion to Stay. In addition, Petitioners' unique situation, and the substantial likelihood that the Government does not regard them as a security threat, makes it even more important that the

case move forward to the merits. A Rule 16 conference or other pre-trial hearing is an important first step.

## VI. CONCLUSION

Petitioners respectfully request that the Court require the Government to provide prompt factual returns, enter the November 8, 2004 Protective Order and related orders, hold a Rule 16 or other pre-trial conference at its earliest convenience, and grant Petitioner's other requested relief.

Dated: April 5, 2005

Respectfully submitted,

ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM,

By their attorneys

_____
Sabin Willett
Neil McGaraghan
Jason S. Pinney
Daniel Hunter Kiel
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8925

Susan Baker Manning
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW, Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439