IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM, et al.,

    Petitioners,

    v.

GEORGE W. BUSH, et al.,

    Respondents.

Civil Action No. 05-497 (JR)

**RESPONDENTS' OPPOSITION TO PETITIONERS'
MOTION TO STRIKE PORTION OF HOOD DECLARATION**

    Respondents hereby oppose petitioners' August 10, 2005 motion to strike a portion of the Declaration of Brigadier General Jay W. Hood dated August 8, 2005 and submitted in connection with supplemental briefing on Petitioners' Emergency Motion to Vacate Stay Order and Issue Writ Directing Immediate Release of Petitioners.

    Petitioners' motion to strike is baseless and should be denied. Motions to strike are a drastic remedy that is generally disfavored. See, e.g., Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd., 647 F.2d 200, 201 & n.1 (D.C. Cir.1981). "In considering a motion to strike, the court will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike." Aftergood v. CIA, 355 F. Supp. 2d 557, 565 (D.D.C. 2005). Petitioners do not offer any memorandum of law in support of their motion, and its only stated ground is that "[t]he statements are hearsay." Petrs' Mot. ¶ 1 (citing Fed. R. Evid. 802). But all written declarations, including the two petitioners' counsel himself previously submitted in connection with this motion, fall within the literal definition of hearsay. Fed. R. Evid. 801(c). And, as petitioners concede, the Federal Rules of Evidence are not strictly applicable even in an "actual habeas hearing" (Petrs' Mot. ¶ 1), let alone in miscellaneous pre-

hearing motion practice.

To the extent that petitioners' contention is that the only legitimate subjects on which Gen. Hood may offer testimony are those as to which he was an eyewitness, see Petrs' Sur-Reply at 1 ("General Hood . . . was not, so far as the record shows, in Afghanistan to make the observation himself"), that contention is specious. The logical upshot of petitioners' position is that the only way for respondents to provide salient background facts about the circumstances of petitioners' capture would be to track down, interrupt the ongoing duties of, and call the actual individual soldiers or members of allied forces who were "in Afghanistan to make the observations [themselves]." But five Justices of the Supreme Court have rejected this extraordinary notion, even in a case involving detention of a United States citizen, and even where the facts to be established form the operative basis on which the Military intends to continue detaining the individual as an enemy combatant.[1]

More importantly, the inclusion in Gen. Hood's declaration of facts explaining the circumstances of how petitioners came to be detained by the Military in the first place is well justified in light of petitioners' continuing attempt to equate the Military's determination that they should no longer be classified as enemy combatants with the proposition that it was some kind of unconscionable, inexplicable miscarriage for them ever to have been taken into custody

---

[1] See Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2649 (2004) (plurality opinion) ("Hearsay, for example, may need to be accepted as the most reliable available evidence from the Government in such a proceeding."); id. ("factfinding imposition" is "minimal" because it would only "requir[e] a knowledgeable affiant to summarize [] records"); id. at 2651-52 ("As we have discussed, a habeas court in a case such as this may accept affidavit evidence like that contained in the Mobbs declaration [of DoD official specifying circumstances of capture, id. at 2637] . . . ."); id. at 2683-85 (Thomas, J., dissenting) (opining that the amount of process due would not exceed that described in the plurality opinion).

2

or previously detained as enemy combatants at all.  See, e.g., Petrs' Mem. in Supp. of Emerg. Mot. at 10; Petrs' Supp. Mem. at 6-7.  Petitioners have repeatedly taken liberties to engage in such misleading innuendo, and Gen. Hood, who is responsible for the custody of detainees at Guantanamo, was able to shed light on the historical circumstances to dispel that innuendo, based on information available to him in the course of his responsibilities.

Furthermore, the same background information also serves to inform Gen. Hood's determination that petitioners' original relief sought – allowing petitioners to live at large on the military base alongside U.S. personnel and their dependents – would not be an appropriate solution, see Hood Decl. ¶ 4; indeed, it would arguably be a dereliction of duty for Gen. Hood not to take such information into account when formulating policies that affect the safety and security of the entire Guantanamo base and its personnel.  Petitioners having requested such living arrangements, there was nothing wrong with Gen. Hood giving the Court a full and complete account of the factors that led him to conclude that request was not a viable interim solution.[2]

In sum, there is no basis for striking any portion of Gen. Hood's declaration. Respondents respectfully request that petitioners' motion be denied.[3]

---

[2] Petitioners' insistence that the circumstances described in Gen. Hood's declaration do not constitute "conduct that would be illegal under the laws of the United States or of the Commonwealth of Virginia" (Petrs' Mot. ¶ 3) is entirely beside the point.  The background about the circumstances of petitioners' capture was not offered to establish that they violated any law of the Commonwealth of Virginia, and we are aware of no issue on this motion that turns on whether any such violation has occurred.

[3] While petitioners' motion to strike is directed only toward certain statements in Gen. Hood's declaration, in their sur-reply they denigrate other parts of his declaration (see Hood Decl. ¶¶ 8, 9) by implying that the Government has dragged its feet in effectuating Gen. Hood's offers to accommodate petitioners' concerns about translator and telephone access and base

(continued...)

| | |
|---|---|
| Dated: August 12, 2005 | Respectfully submitted, |

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel

  /s/ Terry M. Henry
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
EDWARD H. WHITE
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 616-8298
Fax: (202) 616-8460

Attorneys for Respondents

---

[3](...continued)
visits. See Petrs' Sur-Reply at 11 & n.14. However, the same afternoon petitioners filed their sur-reply, before government counsel learned of the filing, and less than 48 hours after Gen. Hood's declaration was filed, government counsel contacted petitioners' counsel for a telephone conference in which significant progress was made on working out arrangements for telephone access by petitioner Hakim's family member and a requested visit by petitioners' counsel to Guantanamo with his preferred translator.