UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABU BAKKER QASSIM, *et al.*, | : |
| Petitioners, | : |
| v. | : Civil Action No. 05-0497 (JR) |
| GEORGE W. BUSH, *et al.*, | : |
| Respondents. | : |

**MEMORANDUM ORDER**

      Abu Bakker Qassim and A'del Abdu Al-Hakim are Muslim Uighurs, natives of China's western semi-autonomous Xinjiang province. They were captured by Pakistani security forces in late 2001 or early 2002, delivered into U.S. custody, and held in Afghanistan for approximately six months. In June 2002 they were transferred to the naval base at Guantanamo Bay, Cuba, where they were detained as "enemy combatants," and where they remain to this day, even though, nearly five months ago, a Combatant Status Review Tribunal (CSRT) determined that "they should no longer be classified as enemy combatants." Resp't Mem. in Opp'n to Mot. to Vacate Stay Order at 4, n.5.

      Qassim and Al-Hakim petitioned for a writ of habeas corpus on March 10, 2005. The government (which knew about the CSRT determination but advised nobody) moved for a stay of proceedings pending the Court of Appeals' decision in the consolidated appeals of <u>Khalid v. Bush</u>, 355 F. Supp. 2d 311 (D.D.C. 2005), and <u>In re Guantanamo Detainee Cases</u>, 355 F. Supp.

2d. 443 (D.D.C. 2005).  Petitioners (whose counsel were ignorant of the CSRT determination) moved for a preliminary injunction. On April 13, 2005, I (also ignorant of the CSRT determination) denied the motion for preliminary injunction and granted a stay of all proceedings concerning these petitioners, including "their release, repatriation, or rendition."[1]

In the midst of this motions practice, counsel for petitioners twice sought information from the government about proceedings before the CSRT, <u>see</u> Manning Decl., Exs. G-H.  The government did not respond.[2]  It was only in mid-July, when petitioners' counsel traveled to Guantanamo Bay to meet their clients for the first time, that counsel were informed by their clients that the CSRT had found them not to be enemy combatants. After this information was confirmed by a JAG officer stationed at Guantanamo Bay, Willett Decl. ¶ 15, counsel filed an emergency motion to vacate the stay order and for their clients' immediate release.  The government opposed, and a hearing was held on August 1, 2005.

---

[1] Both sides have appealed that stay order, but the parties agree that the pendency of their appeals does not oust this Court of jurisdiction to decide the matters presented by petitioners' instant motions.

[2] At a hearing held on August 1, 2005, the government acknowledged receiving informal discovery requests for the 120 detainee cases it has, and stated that it generally did not respond to such requests "simply because we're not in a position to do it, especially when these cases should be stayed because the legal issues involved are before the Court of Appeals."  August 1, 2005 Tr. at 16.

The status of "enemy combatant" has been, until now, the only handhold for the government's claim of executive authority to hold detainees at Guantanamo.  It is the only rationale approved by the Supreme Court, see Hamdi v. Rumsfeld, 124 S.Ct. 2633, 2639-40 (2004).  Now that these petitioners are "no longer enemy combatants" (NLECs[3]), the government has had to articulate a new reason for continuing to hold them.  That reason, asserted at the August 1 hearing and again in the government's post-hearing memorandum, is "the Executive's necessary power to wind up wartime detentions in an orderly fashion."  Resp't Supplemental Mem. at 12.  There is no basis for this claimed authority except the Executive's assertion of it.

It is not necessary to decide whether such a "wind up" power really exists, however, because the parties agree that Qassim and Al-Hakim should be and will be released.  Their disagreement is about when they will be released, what is to become of them pending their release, and what power, if any, this Court has to control events.  It is undisputed that the government cannot return these petitioners to China, because they

---

[3] Petitioners suggest that the designation "no longer enemy combatant" has Orwellian overtones, but the "no longer" language appears to be fairly rooted in the Supreme Court's holding that a detainee "seeking to challenge his classification as an enemy combatant" must be given "notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions . . . ." Hamdi, 124 S.Ct. at 2648.

would be persecuted there,[4] but, the government says, notwithstanding sensitive, ongoing diplomatic efforts to place them, it has no place to send them at the moment.  If that is the case, petitioners say, and if they cannot be released to civilian quarters on the Guantanamo Bay base (a proposition that I have already rejected in open court), then the government should be ordered to "produce at the hearing [here in Washington, D.C.] the bod[ies] of the person[s] detained" pursuant to the plain language of 28 U.S.C. § 2243.  The government opposes that suggestion, arguing (I) that the stay should remain in effect because the scope of the habeas writ as it applies to Guantanamo detainees is an open question that is still pending, undecided, before the Court of Appeals, and (ii) that in any case the habeas statute is trumped by the exclusive power of the Executive to say who can and who cannot enter the United States.

All the Supreme Court did, in <u>Rasul v. Bush</u>, 124 S.Ct. 2686 (2004), was confirm the jurisdiction of the federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly

---

[4] "The [Chinese] Government used the international war on terror as a pretext for cracking down harshly on suspected Uighur separatists expressing peaceful political dissent and on independent Muslim religious leaders." United States Department of State, Country Reports on Human Rights Practices 2004: China, <u>available at</u> http://www.state.gov/g/drl/rls/hrrpt/2004/41640.htm.  The State Department reports executions, torture, and other mistreatment of suspected separatist Uighurs by the Chinese government.

innocent of wrongdoing." Id. at 2699.  It did not decide what relief might be available to Guantanamo detainees by way of habeas corpus, nor, obviously, did it decide what relief might be available to detainees who have been declared "no longer enemy combatants."  Neither of the twinned cases now pending before the Court of Appeals presents, or appears to have contemplated, the case of a detainee who has been through the CSRT process and declared no longer an enemy combatant.  Judge Joyce Green's ruling in Guantanamo Detainee Cases was that Guantanamo detainees have enforceable constitutional rights, 355 F. Supp. 2d at 457 -- a proposition that is unnecessary to either side's position in the present case.  Judge Leon's ruling in Khalid, that there is no cognizable legal theory on which a writ of habeas corpus could actually issue in such a case, 355 F. Supp. 2d at 321, did not involve and did not consider the case of an "NLEC" detainee.  Thus these petitioners are correct, as a formal, legal matter, in their insistence that the issue presented by this case is not before the Court of Appeals.  As a practical matter, however, it is a safe prediction[5] that any order requiring the immediate release of these petitioners would be appealed, that the Court of Appeals would enter a stay, as it did in Guantanamo Detainee Cases, and that whatever processes are now underway for

---

[5] "The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law." Holmes, The Path of the Law.

alleviating the conditions of petitioners' detention and arranging for their relocation to another country would be put on hold pending the appeal.

Turning to the question of whether this court or any court has the power to command the production of the body of a habeas petitioner when obedience to that command would bring an alien into the United States: The authorities cited by the government are for the most part inapposite; this case does not involve judicial review of an executive branch decision to exclude aliens.  The government may have reason to suspect that petitioners' "primary interest in being brought to the United States is to derive various immigration-related benefits," Resp't Supplemental Mem. at 16, but petitioners' motives are not material to the question at hand.  The government correctly points out that the language of the habeas statute that contemplates the physical production of a petitioner is rarely used, but this is a rare case.  And the government's argument that the Real ID Act controls the interpretation of the habeas statute, because it was enacted later, strikes me as specious.

It is unnecessary, however -- at least for now -- to decide whether this Court has the power to require the production of the petitioners.  The idea of such an order emerged during the August 1 hearing as one way of dealing with petitioners' complaints that they were denied telephone communication with

their families, that they could meet their lawyers only when chained to tables or walls in detention cells, and that the scarcity of Uighur interpreters and the red tape associated with clearing interpreters to work with counsel made regular attorney-client communication impossible.  The government's supplemental memorandum makes substantial concessions on those points.

Petitioners have asked for a "hearing on the conditions of interim relief."  Giving it that label would suggest a ruling on the question of whether the Court has the power to grant "relief" to these petitioners.  Nevertheless, as it appears that both sides seek a just and honorable solution to the practical problem before us, a hearing will be set for the purpose of considering and perhaps reaching agreement on the conditions in which the petitioners are live, and the privileges they will have, pending their relocation to another country.

It is accordingly:

ORDERED that a hearing is set for **August 25, 2005, at 2:00 p.m.**  And it is

FURTHER ORDERED that the government be prepared at the time of that hearing to make appropriate disclosures to the Court <u>in camera</u> augmenting the declaration of Pierre-Richard Prosper concerning the process and status of efforts to relocate the petitioners.

```
                                    JAMES ROBERTSON
                               United States District Judge
```