UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ABU BAKKER QASSIM, *et al.*, <br><br> Petitioners/Plaintiffs, <br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Case No. 05 cv 0497 (JR) <br><br> **(Hearing Requested)** |

**PETITIONERS' THIRD SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO VACATE STAY ORDER AND ISSUE WRIT DIRECTING
<u>IMMEDIATE RELEASE OF PETITIONERS</u>**

In further support of their Emergency Motion to Vacate Stay Order and Issue Writ Directing Immediate Release of Petitioners ("<u>Emergency Motion to Vacate</u>"), Petitioners Abu Bakker Qassim and A'Del Abdul Hakim ("<u>Petitioners</u>") submit this Third Supplemental Memorandum in Support of Emergency Motion to Vacate ("<u>Third Supplemental Memorandum</u>"). This Third Supplemental Memorandum is necessitated by ongoing questions of fact that purportedly plague the Government in their efforts to release Petitioners, as well as pending legislation that threatens to prevent Petitioners from challenging their continued detention at Guantánamo Bay Naval Station, Guantánamo Bay, Cuba ("<u>Guantánamo</u>").

**INTRODUCTION**

It has been *four months* since Petitioners submitted their Emergency Motion to Vacate. It has been *four years* since Petitioners were taken into custody by the United States. Still, the Government refuses to release them, despite the fact that they were never enemy combatants.

Now, perhaps more than ever, Petitioners must be allowed to challenge the Government's factual bases for continuing to imprison them. It is time to bring Petitioners to Court and hold a hearing.

## I. The Government is Required to Produce Petitioners at a Hearing

The mandate in a habeas corpus proceeding is plain. "Unless the application for the writ and the return present *only issues of law* the person to whom the writ is directed *shall be required to produce* at the hearing the body of the person detained." 28 U.S.C. § 2243 (emphasis added). Thus, where a writ for habeas corpus presents an issue of fact, the Government has a clear *statutory obligation* to produce the petitioner at a hearing. *Rivera v. Santirocco*, 814 F.2d 859, 862 (2nd Cir. 1987) ("The habeas statute states that the custodian…'shall be required to produce at the hearing the body of the person detained.' Plainly, the custodian's duty 'to produce' the subject of the writ requires…that the subject be brought before the court."); *U.S. ex rel. Griffin v. McMann*, 310 F. Supp. 72, 73 (D.C.N.Y. 1970) ("[I]t is the right of the petitioner to be present at his hearing where there are questions of fact to be litigated."). As the Supreme Court recognized, "[t]his is…the only admissible procedure. *Nothing less will satisfy the command of the statute….*" *Walker v. Johnston*, 312 U.S. 275, 285 (1941) (emphasis added). To hold otherwise would ignore the plain language of the statute, and deny Petitioners the right to speak out against their continued detention. In a habeas corpus proceeding, Petitioners "denied an opportunity to be heard, ha[ve] lost something indispensable." *U.S. v. Hayman*, 342 U.S. 205, 220 (1952) (internal quotations omitted).

### A. <u>The Government's Efforts to Resettle Petitioners Involves Questions of Fact</u>

Respondents claim that they intend to release petitioners "as soon as possible," and that they "have been diligently undertaking efforts toward that end." Resp'ts Memo. in Opp'n to Pet'rs Emergency Motion to Vacate Stay at 1 (July 29, 2005) (dkt. no. 25) ("<u>Resp'ts Memo. in</u>

Opp'n"). Respondents also maintain that "the only thing holding up petitioners' release is that respondents are trying to locate a suitable country for transfer to avoid a situation where petitioners would be returned to a country where it is more likely than not that they would be tortured." *Id.* Petitioners contend that the Government has been laggard in its resettlement efforts.

These are factual questions. Has the Government in fact been "diligent" in its efforts to relocate Petitioners "as soon as possible"? Is the Government's inability to locate a "suitable" country in fact "the only thing" delaying Petitioners' release? Under the plain language of the statute, the Government is *obligated to produce* the bodies of the Petitioners, in this Court, at a hearing to resolve these factual issues. *See* 28 U.S.C. § 2243.

  B. The Government's Claim that Petitioners' Release would Threaten Public Safety Raises a Question of Fact

Respondents presume that Petitioners "have no allegiance or loyalty to the United States," Resp'ts Memo. in Opp'n at 10, and suggest that their interim release would threaten public safety. *See id.*; *see also* Resp'ts Supplemental Memo. Pursuant to the Court's Invitation at the Aug. 1, 2005 Hr'g (Aug. 8, 2005) (dkt. no. 27) ("Resp'ts Supplemental Memo.") (alleging, without evidence, that Petitioners "received military training in Afghanistan, at a camp provided by the Taliban," and "were apprehended with other suspected enemy combatants").[1] Petitioners contest these unsubstantiated assertions. Again, resolution of these issues involves a factual inquiry, and necessitates the attendance of Petitioners at a hearing.

---

[1]  These unsubstantiated claims are, of course, directly contrary to the Government's own conclusive determination that Petitioners are not "enemy combatants." In determining that Petitioners are not "enemy combatants," the Government has determined that neither is "an individual who was part of or supporting the Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces." *See* Order Establishing Combat Status Review Tribunal issued by Deputy Secretary of Defense Paul Wolfowitz (July 7, 2004) at ¶ d (defining "enemy combatant") (available at www.defenselink.mil/news/Jul2004/d20040707review.pdf).

### C. Petitioners' Living Conditions Presents Factual Issues

On August 25, 2005, this court held a hearing to determine "the conditions in which the petitioners are live, and the privileges they will have, pending their relocation to another country." Memo. Order at 7 (Aug. 19, 2005) (dkt. no. 34). These determinations, as well, are rife with factual issues. Accordingly, the habeas statute mandates that the Government produce Petitioners' at a hearing before this Court.

## II. This Court has Jurisdiction to Conduct a Hearing

It has been well over a year since the Supreme Court in *Rasul v. United States* held that 28 U.S.C. § 2241 confers on this Court jurisdiction to "*hear* petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base," 124 S. Ct. 2686, 2698 n.15 (2004) (emphasis added), and "to consider in the first instance *the merits* of the Petitioners' Claims." *Id.* (emphasis added). *Rasul* imbues the Court with ample authority to hold a hearing, and, when read alongside the habeas statute, to bring the Petitioners' before the Court in order to resolve the factual disputes that form the basis of their continued incarceration.

The Government throws up a litany of legal and factual arguments in an attempt to prevent Petitioners from being brought before this Court. *See generally* Resp'ts Supplemental Memo. What these arguments ignore is that the habeas remedy is flexible. As the Supreme Court has declared:

> The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action... The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers. *The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.*

*Harris v. Nelson*, 394 U.S. 286, 290-292 (1969) (emphasis added).

The Government's arguments against the production of the body complicate what is, in reality, a simple issue. Petitioners should be released. The Government acknowledges as much but has nonetheless failed to release them, citing factual constraints. Therefore, Petitioners have the right to appear before the Court to challenge the factual basis for their continued detention. There is no reason for any further delay. *See id.* at 292 ("[A] habeas corpus proceeding must not be allowed to flounder in a procedural morass.") (internal quotations omitted). It is time to hold a hearing, and let Petitioners speak.

### III. Further Delay Might Prejudice Petitioners' Right to a Prompt Hearing

On November 15, 2005, the United States Senate voted, subject to certain exceptions, to strip federal district courts of "jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien outside the United States…who is detained by the Department of Defense at [Guantánamo]." S. 1042, 109th Cong. § (d)(1) (2005) (attached at Ex. 1). This amendment has not become law, and may never become law. Even if it does, its impact will be far from clear. At least one thing is certain, however: Petitioners have a present right to appear before this Court to challenge the factual basis for their continued detention. There is an urgent need for the Government to bring the Petitioners before the Court *now*. Further delay will only add to the injustice.

### CONCLUSION

Petitioners are required to be released. No one challenges that assertion. The only issue is when, where and under what circumstances. The Government claims that it has contacted twenty-five countries and is diligently working to resettle Petitioners. This is a factual question. The Government also claims that Petitioners would pose a threat to society should they be granted release or interim release. This is also a factual question. Because the habeas statute

requires the Government to produce Petitioners before this Court to resolve issues of fact affecting their release, this Court should immediately order the bodies produced at a hearing.

**WHEREFORE**, Petitioners request that they be brought forthwith to the Court, and permitted to respond to the factual bases for their continued dentition in person, and that the Court grant to the Petitioners such other and further relief as may be just and proper.

Dated: November 23, 2005

_____
Sabin Willett
Neil G. McGaraghan
Jason S. Pinney
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8925

Susan Baker Manning
BINGHAM MCCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, D.C. 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439

# EXHIBIT 1

O:\ARM\ARM05Q16.xml S.L.C.

PENDING
HC-7

AMENDMENT NO. 2516        Calendar No._____

Purpose: To improve the amendment.

**IN THE SENATE OF THE UNITED STATES—109th Cong., 1st Sess.**

**S. 1042**

AMENDMENT N°. 2524

To: By: _Graham - Others_ ...litary
  To: _Amdt No 2515_ ...litary
  ...epart-
  ...s for
  ...other

  _8_
  Page(s)

  GPO: 2000 68-330 (mac)

Referred to the Committee on _____ and
ordered to be printed

Ordered to lie on the table and to be printed

AMENDMENT intended to be proposed by Mr. GRAHAM (for himself, Mr. LEVIN, and Mr. KYL) to the amendment (No. 2515) proposed by Mr. GRAHAM

Viz:

1   In lieu of the matter proposed to be inserted, insert
2 the following:
3 **SEC. ___. REVIEW OF STATUS OF DETAINEES.**
4   (a) SUBMITTAL OF PROCEDURES FOR STATUS RE-
5 VIEW OF DETAINEES AT GUANTANAMO BAY, CUBA.—Not
6 later than 180 days after the date of the enactment of
7 this Act, the Secretary of Defense shall submit to the con-

gressional defense committees, and to the Committees on the Judiciary of the Senate and the House of Representatives, a report setting forth the procedures of the Combatant Status Review Tribunals and the noticed Administrative Review Boards in operation at Guantanamo Bay, Cuba, for determining the status of the detainees held at Guantanamo Bay.

(b) PROCEDURES.—The procedures submitted to Congress pursuant to subsection (a) shall, with respect to proceedings beginning after the date of the submittal of such procedures under that subsection, ensure that—

    (1) in making a determination of status of any detainee under such procedures, a Combatant Status Review Tribunal or Administrative Review Board may not consider statements derived from persons that, as determined by such Tribunal or Board, by the preponderance of the evidence, were obtained with undue coercion; and

    (2) the Designated Civilian Official shall be an officer of the United States Government whose appointment to office was made by the President, by and with the advice and consent of the Senate.

(c) REPORT ON MODIFICATION OF PROCEDURES.— The Secretary of Defense shall submit to the committees of Congress referred to in subsection (a) a report on any

modification of the procedures submitted under subsection (a) not later than 60 days before the date on which such modification goes into effect.

(d) JUDICIAL REVIEW OF DETENTION OF ENEMY COMBATANTS.—

 (1) IN GENERAL.—Section 2241 of title 28, United States Code, is amended by adding at the end the following:

 "(e) No court, justice, or judge shall have jurisdiction to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien outside the United States (as that term is defined in section 101(a)(38) of the Immigration and Naturalization Act (8 U.S.C. 1101(a)(38)) who is detained by the Department of Defense at Guantanamo Bay, Cuba.".

 (2) REVIEW OF DECISIONS OF COMBATANT STATUS REVIEW TRIBUNALS OF PROPRIETY OF DETENTION.—

  (A) IN GENERAL.—Subject to subparagraphs (B), (C), and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any decision of a Designated Civilian Official described in subsection

(b)(2) that an alien is properly detained as an enemy combatant.

(B) LIMITATION ON CLAIMS.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to claims brought by or on behalf of an alien—

    (i) who is, at the time a request for review by such court is filed, detained by the Department of Defense at Guantanamo Bay, Cuba; and

    (ii) for whom a Combatant Status Review Tribunal has been conducted, pursuant to applicable procedures specified by the Secretary of Defense.

(C) SCOPE OF REVIEW.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on any claims with respect to an alien under this paragraph shall be limited to the consideration of—

    (i) whether the status determination of the Combatant Status Review Tribunal with regard to such alien applied the correct standards and was consistent with the procedures specified by the Secretary of

Defense for Combatant Status Review Tribunals (including the requirement that the conclusion of the Tribunal be supported by a preponderance of the evidence and allowing a rebuttable presumption in favor the Government's evidence); and

(ii) whether subjecting an alien enemy combatant to such standards and procedures is consistent with the Constitution and laws of the United States.

(D) TERMINATION ON RELEASE FROM CUSTODY.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit with respect to the claims of an alien under this paragraph shall cease upon the release of such alien from the custody of the Department of Defense.

(3) REVIEW OF FINAL DECISIONS OF MILITARY COMMISSIONS.—

(A) IN GENERAL.—Subject to subparagraphs (C) and (D), the United States Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction to determine the validity of any final decision rendered pursuant to Military Commission Order No. 1,

1 dated August 31, 2005 (or any successor military order).

(B) GRANT OF REVIEW.—Review under this paragraph—

(i) with respect to a capital case or a case in which the alien was sentenced to a term of imprisonment of 10 years or more, shall be as of right; or

(ii) with respect to any other case, shall be at the discretion of the United States Court of Appeals for the District of Columbia Circuit.

(C) LIMITATION ON APPEALS.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to an appeal brought by or on behalf of an alien—

(i) who was, at the time of the proceedings pursuant to the military order referred to in subparagraph (A), detained by the Department of Defense at Guantanamo Bay, Cuba; and

(ii) for whom a final decision has been rendered pursuant to such military order.

1 (D) SCOPE OF REVIEW.—The jurisdiction
2 of the United States Court of Appeals for the
3 District of Columbia Circuit on an appeal of a
4 final decision with respect to an alien under
5 this paragraph shall be limited to the consider-
6 ation of—

7 (i) whether the final decision applied
8 the correct standards and was consistent
9 with the procedures specified in the mili-
10 tary order referred to in subparagraph (A);
11 and

12 (ii) whether subjecting an alien enemy
13 combatant to such order is consistent with
14 the Constitution and laws of the United
15 States.

16 (e) EFFECTIVE DATE.—

17 (1) IN GENERAL.—Except as provided in para-
18 graph (2), this section shall take effect on the day
19 after the date of the enactment of this Act.

20 (2) REVIEW OF COMBATANT STATUS TRIBUNAL
21 AND MILITARY COMMISSION DECISIONS.—Para-
22 graphs (2) and (3) of subsection (d) shall apply with
23 respect to any claim ~~regarding a decision~~ a whose re-
24 view is governed by one of such paragraphs and that

1  is pending on or after the date of the enactment of
2  this Act.