# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 05-5477                                                September Term, 2005

Abu-Bakker Qassim, et al.,                                        05cv00497

Appellants

v.

George W. Bush, et al.,

Appellees



Appeal from the United States District Court
for the District of Columbia

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

## ORDER

Upon consideration of the motion (filed under seal) for release pending determination of appeal and the opposition thereto; the motion (filed under seal) to maintain material in appellant's motion for release pending appeal under seal and the response thereto; the emergency motion to dismiss case as moot, the responses thereto, and the reply, it is

ORDERED that the appellees' emergency motion to dismiss as moot be granted for the reasons stated in the memorandum accompanying this order. It is

FURTHER ORDERED that the appellees' motion to maintain material in the appellants' motion for release pending appeal and in the appellees' response under seal be granted. It is

FURTHER ORDERED that the motion for release pending appeal be dismissed as moot.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

PER CURIAM

A True copy:

United States Court of Appeals
for the District of Columbia Circuit

By: _____ Deputy Clerk

FOR THE COURT:

Mark J. Langer, Clerk

*Qassim v. Bush*, 05-5477

## MEMORANDUM

### I.

The petitioners, ethnic Uighurs and former detainees at Guantanamo Bay, Cuba (Uighurs), sought appellate review of the district court's denial of their habeas corpus petition challenging their detention. On May 5, 2006, the Friday before the oral argument scheduled on May 8, 2006, the appellees filed an emergency motion to dismiss the appeal as moot, arguing the Uighurs' appeal was moot because earlier that day the appellees had released the Uighurs to Albania. The Uighurs opposed the motion, claiming their appeal was not mooted by the appellees' voluntary cessation of their detention; moreover, their claim for injunctive relief was not moot. In addition, they argued that their release to Albania neither defeated our jurisdiction under Fed. R. App. P. 23(b) nor complied with part (a) of the same rule, which provides that a habeas petitioner cannot be transferred without court authorization. For the following reasons, we grant the appellees' motion to dismiss.

### II.

#### A. Mootness

##### 1. *Voluntary cessation*

The rationale supporting the defendant's voluntary cessation as an exception to mootness is that, while the defendant's unilateral cessation of the challenged conduct may grant the plaintiff relief, the defendant is "free to return to [its] old ways"—thereby subjecting the plaintiff to the same harm but, at the same time, avoiding judicial review. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982) (case not moot where city repealed challenged provision of ordinance but was free to reenact provision). Accordingly, a case can be mooted by virtue of the defendant's cessation of its allegedly illegal conduct only if "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (quotation omitted). The Uighurs claim the appellees can make neither showing but they are wrong on both counts.

To avoid mootness, the Uighurs cast their challenge as one to the "Executive's" policy of detaining prisoners at Guantanamo, specifically (although the Uighurs' opposition is far from clear on this point[1]) those who are no longer determined to be enemy combatants. The

---

[1] By invoking the transfer and release of other detainees, the Uighurs may also be claiming that they challenge the policy of "repeated engage[ment] in strategic maneuvering and manipulation of the legal system, including the release or transfer of detainees, in an effort to avoid judicial scrutiny in cases involving alleged enemy combatants." *See* Opp'n to Emergency Mot. at 4. Such a challenge would fail, however, for the reasons set out *infra*.

"conduct" that may be reasonably expected to recur, in other words, is the policy of detaining other individuals similarly situated to the Uighurs, not merely the unlawful detention of the Uighurs themselves (which has ceased). *See* Pet'rs' Opp'n to Emergency Mot. (Opposition) at 16 ("[T]he significance of this appeal clearly is not limited to the Petitioners who bring it."). In support they cite *Ukranian-American Bar Association v. Baker*, 893 F.2d 1374 (D.C. Cir. 1990) (*Baker*), for the proposition that "even if the particular situation that precipitates an organization's challenge to a government policy resolves itself at some point during the litigation, the case is not moot as long as the continued existence of the policy is uncontested." Opposition at 16. But *Baker* does not help the Uighurs. In *Baker*, Myroslav Medvid, a Ukranian merchant seaman seeking asylum, jumped off his ship while it was docked on the Mississippi River. After being questioned by U.S. Border Patrol and U.S. Coast Guard agents, he was returned to Soviet custody. The Ukranian-American Bar Association filed suit on November 1, 1985 to prevent the ship from leaving American waters with Medvid aboard. The district court denied relief and we affirmed. Medvid's ship left U.S. waters eight days later and the Bar Association then amended its complaint to allege that it was the government policy to "deny them access to potential political asylees *such as* Medvid, and that that policy has 'denied the plaintiffs their rights of access to Medvid *and others like him* under the First Amendment to counsel such individuals regarding their Constitutional and statutory right to apply for political asylum.' " *Baker*, 893 F.2d at 1376–77 (emphases added). We rejected the government's mootness argument that, because Medvid was no longer in the U.S., there was no live case or controversy.

In relying on *Baker*, the Uighurs overlook a critical distinction: in *Baker* "the complaint challenge[d] the Government's policy, not merely the Government's handling of the Medvid incident." *Id.* at 1377; *see also id.* ("In asserting that no live case or controversy remains, the Government proceeds from a mistaken view of the nature of plaintiff's amended complaint . . . ."). Here, however, the Uighurs' petition and complaint seeks no relief on behalf of anyone other than the named—now-released—Uighurs. *See* Pet'rs' Habeas Pet. & Compl. for Decl. & Inj. Relief (Habeas Petition) at 6 ¶ 18 ("The United States has not shown that Petitioners have been, and are being, detained lawfully . . . in that petitioners have been denied the process due to them . . ."); *id.*, First Claim for Relief at 12 ¶ 36 ("Respondents' actions deny Petitioners the process accorded to persons seized and detained by the armed forces of the United States in times of armed conflict . . . ."); *id.* at 13 ¶ 38 ("Accordingly, Petitioners are entitled to habeas corpus, declaratory and injunctive relief."). In contrast to the *Baker* amended complaint, which sought relief for individuals similarly situated to Medvid and challenged the State Department policy of denying those individuals access to Ukranian lawyers who could assist them in seeking asylum, the Uighurs' prayer for relief requests relief solely as to themselves. *Id.* at 25. Their complaint for declaratory relief also addresses only their own claims. *See id.*, Seventeenth Claim for Relief at 24 ¶ 98–99.[2]

---

[2]The Uighurs' claim for declaratory relief states that "Petitioners are entitled to a declaration that the Executive Order of November 13, 2001, is *ultra vires* and unlawful as applied to Petitioners . . . [and]

3

The "conduct" the Uighurs challenge, therefore, is not the appellees' policy of unlawful detention generally but the appellees' detention of them. Because of their release to Albania, there is no reasonable expectation they will be detained again. Further, as shown below, interim relief—the Uighurs' release—has "eradicated the effects" of the alleged violation, thus satisfying the second prong of the *Nichols* test. *See Nichols*, 142 F.3d at 459.

### 2. *Declaratory and injunctive relief as remaining live issues*

As the United States Supreme Court has stated in the habeas context, "[a]n incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). After his sentence expires or he is otherwise released, however, "some concrete and continuing injury other than the now-ended incarceration or parole—some collateral consequence of the conviction—must exist if the suit is to be maintained." *Id.* (quotation omitted). The Uighurs' argument that their claim for declaratory and injunctive relief survives the mooting of their habeas relief requires the continued existence of a collateral consequence. There is no such consequence.

In asserting that the appellees' motion to dismiss for mootness errs in assuming that release from detention at Guantanamo is the only relief they seek, the Uighurs point to their habeas petition, which seeks "*habeas corpus*, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate." Habeas Petition at 21 ¶ 83. In the Supreme Court cases the Uighurs rely on, however, *see* Opposition at 7, the claims for relief that survived mootness were for money damages, not equitable relief.[3] We have likewise repeatedly held that, while damages claims may survive release from incarceration, equitable

---

that the prolonged, indefinite, and restrictive detention of Petitioners is arbitrary and unlawful . . . .". *See* Habeas Petition at 24 ¶¶ 98–99.

[3]*See Fulton Corp. v. Faulkner*, 516 U.S. 325, 327 n.1 (1996) (tax refund issue survived repeal of relevant statute); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 370–71 (1996) (action for damages for alleged violation of Fair Housing Act survived mooted injunctive relief claim; "Given respondents' continued active pursuit of monetary relief, this case remains 'definite and concrete, touching the legal relations of parties having adverse legal interests.' ") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937); citing *Powell v. McCormack*, 395 U.S. 486, 495-500 (1969); *Bond v. Floyd*, 385 U.S. 116, 128, n.4 (1966)); *Ellis v. Bhd. of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 442 (1984) (damages claim, "however small," survived mooted injunctive relief claim); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981) (damages claim survived mooted preliminary injunction claim); *Powell*, 395 U.S. at 495–500 (lost salary claim survived mooted injunctive relief claim because of Powell's "obvious and continuing interest in his withheld salary").

claims do not.[4] The Uighurs allege no collateral consequence of their past detention that we can now redress.

## B. Applicability of Fed. R. App. P. 23

The Uighurs argue that despite their release to Albania, we retain jurisdiction to consider their pending motion for release under Fed. R. App. P. 23(b) because habeas jurisdiction attaches so long as the petitioner is in custody when the petition is filed and subsequent release from custody does not oust the court of jurisdiction.[5] Opposition at 10 (citing *Carafas*, 391 U.S. at 238–39 (habeas statute "contemplate[s] the possibility of relief other than immediate release from physical custody"; jurisdiction "not defeated by the release of the petitioner prior to completion of proceedings on such application")). They also claim their release was improper under Fed. R. App. P. 23(a),[6] which "was designed to prevent prison officials from impeding a prisoner's attempt to obtain *habeas corpus* relief by physically removing the prisoner from the territorial jurisdiction of the court in which a *habeas* petition is pending." *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981).

Rule 23(b) does not supersede the independent requirement that the petition must involve a live case or controversy at all stages of review, not only at the time the complaint

---

[4]*See Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) ("[W]hen a prisoner seeking injunctive relief challenges his parole eligibility date but is subsequently released on parole, his claims are moot unless he alleges continuing adverse consequences from the challenged parole records"; release from parole therefore "rendered moot his claims for . . . prospective injunctive relief. . . . His damages claims, however, remain properly before us."); *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir.), *cert. denied*, 525 U.S. 851 (1998) ("[A] prisoner's transfer or release from prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison"; "[plaintiff's] release from confinement surely moots his case. Neither he nor the other two plaintiffs are before us asking for damages. None of the three complaints has blossomed into a class action. Each plaintiff's request for injunctive relief stemmed from conditions alleged to exist at Lorton."); *cf. Carafas v. LaVallee*, 391 U.S. 234, 238–39 (1968) (expiration of prisoner's sentence did not moot habeas petition because "[i]n consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror"; "disabilities or burdens [which] may flow from petitioner's conviction" gave him "a substantial stake in the judgment of conviction which survive[d] the satisfaction of the sentence imposed on him.") (first alteration in original) (quotations and footnotes omitted).

[5]Rule 23(b) provides: "While a decision not to release a prisoner is under review, the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court, may order that the prisoner be: (1) detained in the custody from which release is sought; (2) detained in other appropriate custody; or (3) released on personal recognizance, with or without surety."

[6]Rule 23(a) provides: "Pending review of a decision in a habeas corpus proceeding commenced before a court, justice or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not *transfer* custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party." (emphasis added).

5

is filed. "[F]or a court to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition *and* that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution." *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (emphasis in original) (citing *Spencer,* 523 U.S. at 7). In addition, Rule 23(a) does not apply because the Uighurs' *release* is not a "transfer" of custody; the plain language of the Rule applies only to the transfer of a habeas petitioner from one custodian to another. As the Ninth Circuit noted, "Rule 23, FRAP, was promulgated to alleviate jurisdictional problems sometimes created by geographical limits on habeas corpus jurisdiction." *Brady v. U.S. Parole Comm'n*, 600 F.2d 234, 236 (9th Cir. 1979) (finding Rule 23(a) inapplicable to Parole Commission's release of prisoner seeking appellate review of habeas petition denial). *See also* Fed. R. App. P. 23(a) ("the person having custody of the prisoner must not *transfer custody to another* . . .") (emphasis added). Likewise, the district court in *O.K. v. Bush,* 377 F. Supp. 2d 102, 116 (D.D.C. 2005) observed, "[n]othing in the Rule indicates a desire to extend it to situations where the United States (or a state) is transferring an individual out of federal or state custody entirely," and, as to Rule 23(a), we agree.

For the foregoing reasons, we grant the appellees' emergency motion to dismiss the appeal as moot.